[Civ. No. 2987. First Appellate District, Division One.—September 2, 1919.]

JOSEPH B. MORGAN, etc., et al., Respondents, v. HORACE P. DIBBLE et al., Appellants.

[1] VENDOR AND VENDEE—ACTION FOR SPECIFIC PERFORMANCE—CONTRACT OF SALE INEQUITABLE—RELIEF.—In this action to revise and specifically perform an agreement for the sale and purchase of real property, and for damages in the event specific performance could not be had, the court having found that the land agreed to be sold to defendant was worth less than the sum agreed to be paid, and the contract therefore inequitable, was correct in

denying plaintiffs a decree in specific performance. Such a decree cannot be supported in the absence of a finding that the contract was just and reasonable, and the consideration adequate.

[2] ID.—RECOVERY OF DAMAGES.—While there are contracts, perfectly valid, which a court of equity will not set aside for any unfairness, but which are so unfair that specific performance will not be decreed, the party being left to his remedy at law, an action to recover damages in lieu of specific performance lies not at law, but in equity, for the right to such damages depends upon the right to specific performance, and is not available until the latter is established; therefore, in this action, the trial court having determined that plaintiffs were not entitled to a decree in specific performance, judgment for damages should not have been entered against the defendants.

[3] ID.—BREACH OF CONTRACT TO PURCHASE REAL PROPERTY—DAMAGES—IMPROPER ITEMS.—The measure of damages for the breach of an agreement to purchase an estate in real property, as prescribed by section 3307 of the Civil Code, does not include such items as cost of certificate of title to the land, commission for obtaining the loan covered by the first mortgage which was agreed to be assumed by the defendants, or the agent's commission for making the sale.

[4] ID.—PROVISION WITH REFERENCE TO MORTGAGES — CONTRACT TOO UNCERTAIN.—A contract for the sale and purchase of real property containing a provision that the purchasers "shall assume a first mortgage of five thousand dollars due on or before five years from date, it being further understood that no payment shall be made on the principal until at least one year shall have elapsed, and any payment shall be made on any regular interest pay-day. Interest on said $5,000 to be at the rate of 8% payable semi-annually," and, further, that the purchasers shall "assume a second mortgage" made payable to a given individual of $19,700, payable on or before ten years from date, interest payable at 7% per annum payable semi-annually," is not sufficiently definite and certain to support an action in specific performance.

[5] ID.—RIGHT OF WAY FOR PIPE-LINE — PROVISION INDEFINITE.—A provision in such contract that the vendors shall "give a right of way for a pipe-line from Fifth St. over the eastern boundary of five acre Lot 3," is so indefinite as to amount to no covenant at all.

[6] ID.—OPTION PROVISION UNCERTAIN.—A provision in such contract that "this agreement includes an option by which" the vendors "may purchase lot 6 of block 145 during the next six months for

2. Damages in lieu of specific performance, note, 20 **L. R. A.** 752.

the sum of four thousand dollars to be deducted from the second mortgage," is likewise uncertain.

[7] ID.—ESCROW INSTRUCTIONS AS PART OF AGREEMENT.—In this action to revise and specifically perform an agreement for the sale and purchase of real property, the instruction prepared by the title company which the parties directed it to use as its "instructions for this exchange," constituted neither a separate agreement of sale nor a supplemental part of the first agreement.

[8] ID.—PERFORMANCE OF CONDITIONS BY VENDORS — UNSUPPORTED FINDING—EVIDENCE.—In this action the finding of the lower court that plaintiffs had performed, or were in position to perform, all the terms of the contract imposed on them, was not supported by the evidence, which showed that the first mortgage on the ranch executed by plaintiffs was not for the term provided in the agreement, that their land was subject to public easements which could not be removed, and that they executed a lease on the property extending beyond the time when the exchange was to be made.

[9] ID.—AGREEMENT TO MAKE GOOD TITLE—KNOWLEDGE OF RIGHTS OF WAY—WAIVER OF FULFILLMENT.—Where the vendors were in express terms obligated to make good title (except as to encumbrances specified), as a condition of sale, even actual knowledge by the purchasers of the true status of the rights of way would not, while the contract remained executory, be deemed to imply a waiver of substantial fulfillment of the condition for title.

[10] ID.—INABILITY OF VENDORS TO PERFORM—RIGHT OF VENDEES TO RESCIND.—Where, at the time of the execution of the sale and at the time when it should have been performed, the title to the vendors' land was incurably defective by reason of public servitudes, a cloud which in the nature of things they could not remove by ordinary methods of business negotiation, the purchasers were entitled to rescind at any time.

APPEAL from a judgment of the Superior Court of San Diego County. W. A. Sloane, Judge. Reversed.

The facts are stated in the opinion of the court.

Leroy A. Wright and Thomas D. McLean for Appellants.

Henry A. Hunter for Respondents.

WASTE, P. J.—This is an action to revise and specifically perform an agreement for the sale and purchase, or, more properly speaking, an exhange, of real estate, and for damages, in the event specific performance cannot be had. Plaintiffs, so they allege, agreed to sell, and the defendants agreed

to buy, a tract of land in Imperial County, and certain shares of stock of Imperial Water Company, No. 1, located on said land and appurtenant thereto, for the sum of thirty thousand seven hundred dollars. As part payment of the purchase price the defendants agreed to convey to plaintiffs real property in San Diego County, which plaintiffs agreed to accept at the mutually agreed price of six thousand dollars. As another part payment of the purchase price defendants agreed to assume a first mortgage of five thousand dollars, payable on or before August 1, 1914, with interest at the rate of eight per cent per annum, payable semi-annually, which plaintiffs agreed to execute upon the Imperial County property. As the balance of the purchase price the defendants agreed to assume a second mortgage on the same property, made payable to Bert Morgan, one of the plaintiffs, in the sum of nineteen thousand seven hundred dollars, payable on or before ten years from date, with interest at the rate of seven per cent, payable semi-annually.

The contract was to be performed within sixty days from its date.

The contract contained a stipulation that the Imperial Valley ranch should be free and clear of all encumbrances, other than the two mortgages just noted, except the last installment of taxes for the fiscal year 1914-15. In this connection plaintiffs alleged in their complaint that, at the time of the execution of the contract, it was mutually agreed and understood that the Imperial County property should be conveyed by the plaintiffs subject to rights of way then existing thereon, but that, through inadvertence and mistake, the agreement failed to so express the true agreement of the parties.

The plaintiffs alleged their readiness and ability, at all times, and full performance on their part, but that defendants had refused to comply with the terms of the agreement; that the consideration for the agreement was adequate, and the same was, as to the defendants, just and reasonable. The defendants, answering, admitted the execution of the agreement, but denied that it constituted a valid contract of sale; denied that the right of way clause was the result of mistake or inadvertence; denied performance on the part of the plaintiffs; and denied that the consideration for the agreement as to them was adequate, or

that the contract was reasonable or just. It was alleged in the answer that the minds of the parties never met in the execution of the agreement; that it had been abrogated by other proposals and offers, never accepted by defendants; that plaintiffs by their acts had worked a rescission of the contract, which, it was further alleged, had been obtained by fraud, and misrepresentation, as to the value of the Imperial Valley ranch, the character and nature of its surface, and of its soil, and its adaptability for irrigation and subdivision purposes.

The trial court found that the contract of sale was made as alleged by plaintiffs, and that subsequently an agreement supplemental to and a part of the original contract was entered into by the parties. In its findings it construed the two agreements together and thereafter refers to them as the "agreements." This supplemental agreement will be referred to hereafter as the "escrow instructions." The court made no finding on the issue raised by the pleadings as to the mistake alleged to have been made in the original contract relative to the rights of way, but did find that the assent of the defendants to the agreements was not obtained by the misrepresentation of the plaintiffs, nor under the influence of any mistake. It further found that the plaintiffs had performed, or offered to perform, all on their part to be done, and that they at all times had been ready, willing, and able to so do, but that defendants had on their part refused. The sufficiency of the evidence to support these findings will be considered later.

Continuing, the court found that "defendants herein have received an adequate consideration for said agreements, and that said agreements were and now are as to said defendants just and reasonable." After other declaration of facts, the court then finds: "That the land agreed to be sold, and purchased by said defendants, under said agreements, was, and is, worth a sum less than the sum of thirty thousand dollars, as specified in said agreements, and that said price is excessive, and the contract inequitable, and that on account, and solely by reason thereof, specific performance should be denied to plaintiffs." These findings are fatally inconsistent.

The court also found that plaintiffs, relying on the agreements entered into between themselves and defendants, had,

"in order to fulfill their part of said contract, necessarily incurred certain expenses, as follows": certificate of title to their land, $150; commission for obtaining the loan, covered by the first mortgage to be assumed by defendants, one hundred dollars; and for the agent's commission for making the sale, or exchange of the property, one thousand two hundred dollars, all to their damage in the sum of $1,450. As conclusion of law the court found that plaintiffs were not entitled to specific performance, but were entitled to judgment against defendants, and each of them, for the sum of $1,450, and costs of suit. Such judgment was thereupon entered and defendants appeal. No appearance was made in this court on the part of respondents, and no brief has been filed in their behalf, although the transcript on appeal was filed February 1, 1917, and appellant's opening brief was filed within thirty days thereafter, as required. Such palpable neglect on the part of those supposedly interested, in the matter in litigation, leads us to assume that they have no faith in the righteousness of the judgment secured by them in the lower court. Our examination of the record lends confirmation to this conclusion.

[1] The trial court having found that the land agreed to be sold to defendants was worth less than the sum agreed to be paid, and that the price of thirty thousand dollars was excessive, and the contract therefore inequitable, was correct in denying plaintiffs a decree in specific performance. Such a decree cannot be supported in the absence of a finding that the contract was just and reasonable and the consideration adequate. (Civ. Code, sec. 3391; *Gibbons* v. *Yosemite Lumber Co.*, 172 Cal. 714, 716, [158 Pac. 196].)

[2] Appellants contend that under the findings the court should not have awarded the plaintiffs damages. There are contracts, perfectly valid, which a court of equity will not set aside for any unfairness, but which are so unfair that specific performance will not be decreed. (*White* v. *Sage,* 149 Cal. 613, 615, [87 Pac. 193].) In such cases the party is left to his remedy at law. (*Agard* v. *Valencia,* 39 Cal. 292, 302; *Prince* v. *Lamb,* 128 Cal. 128, 129, [60 Pac. 689].) The right to pecuniary compensation in lieu of specific performance "assumes, of course, a sufficient contract, performance or an offer to perform by the plaintiff, and every other element requisite, on his part, to the cognizance of his case

in chancery." (*Milkman* v. *Ordway*, 106 Mass. 232, 254.) There is no authority for holding that equity can grant damages unless some case of equitable relief is made out also, to which the damages would be applicable or subsidiary. (*Bourget* v. *Monroe*, 58 Mich. 563, 566, [25 N. W. 814].) An action to recover damages in lieu of specific performance lies not at law, but in equity, for the right to such damages depends upon the right to specific performance, and is not available until the latter is established. (Cooley v. Lobdell, 153 N. Y. 596, 603, [47 N. E. 783].) A court of equity will not grant pecuniary compensation, in lieu of specific performance, unless the case presented is one for equitable interposition. (*Marks* v. *Gates*, 154 Fed. 481, [12 Ann. Cas. 120, 14 L. R. A. (N. S.) 317, 321, 83 C. C. A. 321].) "In other words, the ancillary power to award compensatory damages can only be exercised in a case where the equitable relief prayed for might have been given." (*Clark* v. *Rosario Mining & Milling Co.*, 176 Fed. 180, 189, [99 C. C. A. 534].) Judgment for damages, therefore, should not have been entered against the defendants. [3] Furthermore, the items of the damages, included in the court's findings, as the basis for the judgment, do not fall within the provisions of section 3307 of the Civil Code, which provides the measure of damages caused by breach of an agreement to purchase an estate in real property.

[4] The original agreement of sale falls short of the requirements necessary to support an action in specific performance, which can only be granted when the contract is definite and certain. (*Meyer* v. *Lincoln Realty Co.*, 14 Cal. App. 756, 757, [113 Pac. 333] ; *Minturn* v. *Baylis*, 33 Cal. 129.) It is not definite and certain in all its terms. The agreement provides that the defendants shall "assume a first mortgage of five thousand dollars due on or before five years from date, it being further understood that no payment shall be made on the principal until at least one year shall have elapsed, and any payment shall be made on any regular interest pay-day. Interest on said $5,000 to be at the rate of 8% payable semi-annually," and, further, the defendants shall "assume a second mortgage made payable to Bert Morgan of $19,700, payable on or before ten years from date interest payable at 7% per annum payable semi-annually." While, as was said in *Carr* v. *Howell*, 154 Cal. 372, 378, [97 Pac.

885, 888], "the fact that mortgages sometimes or even usually contain other terms and covenants than here presented does not render the contract uncertain," we are of the opinion that there is such a dearth of facts in the contract here under consideration, relative to the property, included in the mortgages, the parties to whom and by whom executed, whether already executed or to be executed, the terms of the notes or other evidence of indebtedness, to be given, if any, the matter of partial payments, and whether said mortgages did actually or were to date from the date of their execution, or from the date of the contract, as to render the contract uncertain in that particular.

[5] The provision in the contract that the plaintiffs shall "give a right of way for a pipe-line from Fifth St. over the eastern boundary of five acre Lot 3" is so indefinite as to amount to no covenant at all. [6] The further stipulation that "this agreement includes an option by which" plaintiffs "may purchase Lot 6 of Block 145 during the next six months for the sum of Four Thousand Dollars to be deducted from the second mortgage," is likewise uncertain.

[7] The document which the parties direct the abstract company to use "as your instructions for this exchange" cannot, in our judgment, be considered as a separate agreement of sale, or a supplemental part of the first agreement. The instructions were prepared by the title company, according to the evidence of plaintiff J. B. Morgan, "for the purpose of carrying out the contract," and in express terms "relate back to date of August 1st to correspond with a certain agreement of sale and purchase made and entered into on said last-mentioned date between the parties hereto." They were not signed by respondent Joseph B. Morgan until some time after the expiration of the sixty-day period within which the contract of sale, or exchange, could be consummated, and after the respondents had withdrawn their deed and certificate of title from the escrow. The respondents and he had utterly failed to reach an agreement respecting a number of matters connected with the transaction, which they had made subject to treaty and further negotiation after the signing of the original agreement. His object in signing the instructions appears to have been the result of a belated attempt to put defendants in default for failing, as plaintiffs at first con-

tended, and alleged in their original complaint, to carry out the terms of the escrow instructions.

The plaintiffs abandoned all reliance on the escrow instructions, as a contract of sale, or exchange, very early in the case. In their amended complaint on which they went to trial they omitted all reference to it, and relied solely on the original agreement. During the trial they sought and secured its introduction in evidence in order "to show that the escrow instructions mention the rights of way, and that defendants had actual knowledge of their existence." It was not until the lower court intimated that it would grant the motion of defendants for a nonsuit that plaintiffs asked and were granted permission, we think improperly, to set it up by an amendment to their complaint. From all the evidence the court should have granted the motion for the nonsuit.

[8] Appellants also contend that the finding of the lower court, that plaintiffs had performed, or were in position to perform, all the terms of the contract imposed on them is not supported by the evidence, and that in fact plaintiffs could not perform, because of the following facts: That the first mortgage on the Imperial Valley ranch executed by plaintiffs was not for the term provided in the agreement; that their land was subject to public easements which could not be removed, and that the plaintiffs executed a lease on the property extending beyond the time when the exchange was to be made. We think this contention of appellant must also be upheld.

After the respective parties had each visited and inspected the other's land, they met to discuss the details of the exchange. The agreement was there read and explained, "taking each line at a time." All parties being satisfied therewith, it was signed and deposited with an abstract company, together with certain escrow instructions, signed by all the parties, excepting Bert Morgan, one of the plaintiffs, who did not affix his signature thereto within the sixty days allowed for performance of the contract, and until long after a serious disagreement had arisen between the parties, and according to appellant, after there had been a mutual rescission of the contract. Plaintiffs also executed and deposited with the abstract company a first mortgage on their property for five thousand dollars in favor of one George Birkett, but payable in three instead of five years, as required in the contract. The trial court found, and the evidence satisfies us, that this

departure from the original stipulation was agreed to by defendants.

In the original contract, as before stated, the stipulation relating to title to plaintiffs' property is that it is to "be free and clear of all other encumbrances" than the two mortgages specified and taxes for the fiscal year 1914–15. In the escrow agreement the stipulation is that it shall be free from all encumbrances other than taxes, and the mortgages provided for in the contract of sale except: "2. The rights of way for roads, ditches and canals now of record." About ten acres of the land were shown by the evidence to be covered by rights of way for a railroad, a canal system and county roads. Appellants contend that nowhere in the record does it appear that these rights of way were ever recorded. This appears to be so. Our examination and conclusion in this regard is confirmed by the statement of the lower court made during the trial. If the lower court, in deciding the case, was proceeding on the theory that the defendants had actual notice of these easements, it seems to have overlooked its own opinion, expressed during the trial, that such was not the case, particularly as to the railroad and parts of the county roads. Plaintiff Bert Morgan testified he did not call the attention of the defendants to these easements before the agreements were entered into. The evidence indicates that defendants did not know of the extent and location of these easements until about the time of the trial. [9] Since the respondents were in express terms obligated to make good title (except as to encumbrances specified), as a condition of sale, even actual knowledge by the purchasers of the true status of the rights of way would not be deemed, while the contract remained executory, to imply a waiver of substantial fulfillment of the condition for title. (*Snowden* v. *Derrick,* 14 Cal. App. 309, 314, [111 Pac. 757]; *Prentice* v. *Erskine,* 164 Cal. 446, 450, [129 Pac. 585].) [10] At the time of the execution of the contract of sale, and when it should have been performed, the title to plaintiff's land was incurably defective by reason of the public servitudes, a cloud which in the nature of things plaintiffs could not remove by ordinary methods of business negotiation. Defendants could have rescinded at any time. (*Prentice* v. *Erskine,* 164 Cal. 446, 449, [129 Pac. 585].)

This defect in the vendor's title made it impossible for the plaintiffs to perform.

Plaintiffs, after the agreements with defendants were entered into, also executed a lease of their land and delivered possession thereunder to third parties, who continued in such occupancy and were on the land at the time of the trial of the action. The time within which possession might be regained by plaintiff was a matter of some conjecture, depending upon the action of the lessees in possession.

Plaintiffs were, therefore, not in position to, and were never able to, perform their contract. The finding of the trial court to the contrary is not supported by the evidence.

The judgment is reversed.

Richards, J., and Kerrigan, J., concurred.