[Civ. No. 2243.   Third Appellate District.—November 4, 1921.]

## JAN WAI et al., Copartners, etc., Respondents, v. SMITH-RIDDELL CO. (a Corporation), Appellant.

[1] CORPORATIONS — SUPPLIES FURNISHED TENANT — PROMISE OF PAY-MENT—AUTHORITY OF PRESIDENT—EVIDENCE.—In an action to re-cover from a corporation the value of meats alleged to have been delivered to a third person at the defendant's special instance and request, a *prima facie* case of the authority of the president of the corporation to contract on its behalf for the payment is established by evidence that such president was in the active management of the corporation affairs and that the corporation had leased certain land to such third person, who was unable to pay for the meats which had already been supplied by the plain-tiffs and was unable to continue farming operations and to pay the agreed rental without the defendant's assistance in the way of such payment.

[2] ACTION FOR GOODS SOLD—DELIVERY TO TENANT AT REQUEST OF DE-FENDANT — QUANTITY — EVIDENCE — SHIPPING TAGS. — It was not erroneous in such action to admit in evidence over objection that they were hearsay, the shipping tags showing the weight of the shipments, where one of the plaintiffs testified as to the making of the tags and of duplicate copies by himself, and the lessee testified as to the receipt of a duplicate tag with each shipment and as to the identity of the offered tags with such duplicates.

[3] CONTRACTS—ORIGINAL PROMISE—STATUTE OF FRAUDS.—If goods are delivered by the seller to one person on the promise of another to pay for them and solely on the promisor's credit, the promise is original and not within the statute of frauds.

[4] ACTION FOR GOODS SOLD—JUDGMENT—REASONABLE VALUE—PLEAD-ING.—A complaint alleging that defendant was indebted to plain-tiff in a specified sum for and on account of meats sold by plain-tiffs to defendant at the special instance and request of defendant and delivered to a third party is sufficient to sustain a judgment for the reasonable value of the meats, as against the objection that the allegation showed an express contract.

[5] CORPORATIONS—STATUS OF PRESIDENT—AUTHORITY TO CONTRACT.—While no presumption arises from the mere fact that one is

1. Presumption as to authorization by corporation for contract executed by president, note, **Ann. Cas. 1917A, 360.**

president of a corporation that he has authority to make a
particular contract, such fact may be considered with other circum-
stances in determining the question. (Opinion on denial of
rehearing.)

[6] ID.—SILENCE OF CORPORATION—KNOWLEDGE OF FACTS—EVIDENCE
OF AUTHORITY.—Actual authority of the president of a corpora-
tion to make a particular contract may be proven by its silence
after knowledge of facts connected therewith. (Opinion . on
denial of rehearing.)

APPEAL from a judgment of the Superior Court of
Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Driver & Driver and G. W. Bedeau for Appellant.

Otis & French for Respondents.

FINCH, P. J.—Plaintiffs were given judgment for the
value of meats alleged to have been "delivered to T. Tomi-
naga at the special instance and request of said defend-
ant."

The evidence shows without conflict that the defendant
leased certain lands in Yolo County to Tominaga for a term
of one year beginning December 1, 1917, at the annual
rental of $12,134, payable as follows: $6,067 on or before
July 15, 1918, and $6,067 on or before September 1, 1918.
Tominaga gave the defendant a mortgage on the crops to be
grown on the land, as security for the payment of the rent,
authorizing the defendant to take possession of and sell
the crops grown in case of default in payment. Plaintiffs
were furnishing Tominaga with meat to supply his camp
and early in 1918 they informed him that they could not
deliver any more meat until he paid his bill for that already
furnished. Not having the money with which to pay the
bill, Tominaga informed the defendant of the situation and
requested the latter to make payment in his behalf. There-
upon the defendant wrote the plaintiff as follows:

"Telephone Market 1022

"F. H. Smith,                                                A. McD. Riddell,
    "President.                                                Secretary.
                    "Smith-Riddell Co.
                "Cable Address Alfalfahay.
        "Codes used A. B. C. 4th and 5th editions.
                        "Alfalfa
                "Producers and Dealers.
                "Ranch and Warehouses
            "Lisbon District, Yolo County.
                "Office and Warehouse
                "381–389 Seventh Street.

                    "San Francisco, Cal., Feb. 2nd, 1918.
"Wing Lee & Co.
    "1122 Third St.
        "Sacramento.
"Dear Sir:
    "I will be in town on Wednesday, Feb. 6th and will call
and see you about the bill that our tenant T. Tominaga
owes you for meat $460.75.
                        "Very truly yours,
                            "SMITH-RIDDELL CO.,
                        "381 7th Street, San Francisco."

Early in the following March, Mr. Smith, who was presi-
dent of the defendant corporation, called on the plaintiffs
at their place of business and gave them the defendant's
check for the amount of the bill. Smith testified that at
that time there was due Tominaga from the defendant suffi-
cient money to pay the bill. Jan Wai, one of the plaintiffs,
testified that, after Smith paid the bill, he asked: " 'When
you send meat?' Bookkeeper said: 'No.' He said: 'Why
not?' 'Because I no give Tominaga credit.' He said:
'You send him order, then I come pay you every, we pay
you every three months.' " Chang Sing Ho, another plain-
tiff, testified that Smith said: "Go ahead, send meat to
Tominaga, we pay every three months, his company. . . .
Until we stop, just go stop,—don't any more. . . . You ship
meat all right, send me bill, never mind about him, we are
going to pay for it." The witness further testified that
Smith said that because he was president of the company
"anything he speak about, his company stand for." Mr.
Smith denied all of the foregoing statements and testified

that he did not authorize the plaintiffs to send meat to Tominaga or promise that the defendant would pay therefor. Since the court found in favor of the plaintiffs it must be assumed on appeal that the statements were made.

Plaintiffs thereafter sent meat to Tominaga as ordered by him for about nine months, mailing statements thereof to the defendant every three months. The defendant did not make payment for any meat so delivered or notify the plaintiffs that it would not pay therefor until January 14, 1919, when it mailed them the following letter:

"These bills belong to T. Tominaga. Send them to him and do not keep sending them to us.

"Yours truly,
"Smith-Riddell Co."

The plaintiffs thereupon ceased to furnish any more meat to Tominaga and finally commenced this action.

In shipping the meat, duplicate tags were made out, one being forwarded to Tominaga, and the other retained by plaintiffs. These tags were admitted in evidence and were all in substantially the same form. The first one is fairly representative of them all and is as follows, the italicized parts being written in pencil:

"Wing Lee & Co.
"Meat and Poultry Market
"Wholesale and Retail.

"Phone Main 3395-J                              1122 3rd Street

"Sacramento, Cal., <em>Mar. 2–18.</em>

"*M. T. Tominaga*
    "Address ————————

| | | |
|---|---|---:|
| 1 | *Meat* | *#15* |
| 2 | | *20* |
| 3 | | |
| 4 | | *300* |
| 5 | *Freight* | *25* |
| 6 | | |
| | | *325@*" |

The testimony of plaintiffs shows that the meat was sent to Tominaga as indicated by the tags and that the price charged was the reasonable market value thereof. Tominaga testified: "After Smith-Riddell paid the bill, January, February, 1918. I think the bill is along about fourteen or fifteen hundred dollars. I think the tags . . . are all right. I got a copy of these tags with every shipment. I recognize these tags as comparing with the ones I received."

Appellant contends that there is no "evidence to show that F. H. Smith was the agent of defendant, or that he had any power to bind appellant in any manner whatever." It must be kept in mind that this is not the ordinary case of simple agency, but that Smith was president of the defendant corporation and, in so far as the evidence discloses, was in the active management of its affairs. He arranged for the leasing of the land to Tominaga. Pursuant to defendant's letter of February 2, 1918, he appeared at plaintiff's place of business and paid Tominaga's bill. He, of course, had full knowledge of his agreement with plaintiffs. Being president of the corporation, his knowledge was equally the knowledge of the corporation. In *Balfour* v. *Fresno Canal etc. Co.,* 123 Cal. 397 [55 Pac. 1062], it is said: "The president of a corporation is a proper person to whom notice, which is to affect a corporation, is to be given. The corporation has no eyes, ears, or understanding save through its agents. The president is considered the head of the corporation, and it is his duty to report to the trustees information affecting the interests of the corporation. And the presumption is that he does so. Usually this is a conclusive presumption. . . . Corporations can only be reached through their agents; it behooves them to be especially careful in regard to the conduct of their agents. In no other way can knowledge be conveyed to the fictitious entity, or negotiations be had with it. It is not usual for parties dealing with a corporation to be brought before the directors to negotiate their contracts." (See, also, *Lowe* v. *Yolo County etc. Water Co.,* 157 Cal. 513 [108 Pac. 297]; *Swartz* v. *Burr,* 43 Cal. App. 442 [185 Pac. 411].)

[1] The defendant had leased its land to Tominaga at a cash rental of $12,134 a year, no part of which was due at the time Smith agreed that the defendant would pay for

the meat to be furnished. Since Tominaga was unable to pay his meat bill, it is a fair inference that he could not have continued his farming operations without the defendant's assistance in the way of payment for the meat delivered by plaintiffs. It is a reasonable inference that the agreed rent was to be paid out of the proceeds of the crops, if at all. The agreement by Smith in behalf of the corporation was, therefore, an appropriate means by which the defendant might reasonably expect to advance its business of leasing its lands. Smith, being the principal officer of the corporation, must be presumed to have had the "implied power to make all contracts which are essential to the successful prosecution of the business." (*Woods Lumber Co.* v. *Moore,* 183 Cal. 497 [11 A. L. R. 549, 191 Pac. 905].) The defendant offered no evidence whatever to show that Smith was not authorized to make the contract on behalf of the corporation. It seems clear that there is sufficient evidence to make out a *prima facie* case of authority.

Appellant urges that the evidence does not show how much meat was delivered or the reasonable value thereof. As stated, the shipping tags, showing the weight of each shipment, were produced and testimony was introduced as to the reasonable value thereof. This testimony was not contradicted and was corroborated by Tominaga.

[2] The admission of the shipping tags in evidence is assigned as error. Plaintiff Chan Sing Ho, who was one of the partners and the bookkeeper for the firm, testified: "Most of the time Jan Wai shipped the meat down to Tominaga, I made out the tag, the other man wrapped the meat. I cut most of the meat shipped to Tominaga, very seldom the other boys cut it. The other men wrapped the meat. I got the order for so much meat, so I cut it up and told the man to ship it. I gave the tag I made out to the boy. I gave the other boys the tags so they would know how much meat to cut. They would cut the meat, wrap it up in a paper and put one of the tags inside, the other tag I kept in the office." This testimony, corroborated as it is by that of Tominaga hereinbefore set forth, furnished sufficient foundation for the admission of the tags in evidence. They were not subject to the objection made "that they are hearsay, and not the best

evidence.'' The account book, made up of entries from
these tags, was properly admitted.

[3] The oral agreement to pay for the meat delivered to
Tominaga is not within the statute of frauds. The com-
plaint and the evidence show an original promise on the
part of the defendant. ''If goods are delivered by the
seller to one person on the promise of another to pay for
them and solely on the promisor's credit the promise is
original and not within the statute.'' (25 R. C. L. 488.)

[4] Appellant argues that the allegations of the com-
plaint show an express contract and are not sufficient to
uphold the judgment for the reasonable value of the meat
furnished. The complaint alleges that ''said defendant
became and now is indebted to plaintiffs in the sum of
fifteen hundred and thirty-two 40–100 dollars ($1,532.40),
for and on account of goods, wares, and merchandise, to-
wit: Meats sold by plaintiffs to defendant at the special
instance and request of defendant and delivered to T.
Tominaga at the special instance and request of said de-
fendant.'' It is sufficient to cite the case of *Merchants C.
Agency* v. *Gopcevic,* 23 Cal. App. 216 [137 Pac. 609].

Appellant makes many other assignments of errors of
minor importance. A discussion of them would unduly
lengthen this opinion. It is sufficient to say that they are
without substantial merit.

The judgment is affirmed.

Burnett, J., and Prewett, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the
district court of appeal on December 3, 1921, and the fol-
lowing opinion then rendered thereon:

THE COURT.—In its petition for a rehearing the appel-
lant states: ''It is admitted in this case that Smith had no
actual authority to enter into the alleged contract.'' No
such admission appears in the record and this court arrived
at a contrary conclusion. The case was not decided on the
theory of ostensible agency or authority or on the doctrine
of estoppel, but upon the conclusion announced that the
evidence showed a *prima facie* case of actual agency and
authority. Neither was the decision based upon any pre-
sumption that Smith had authority to make the agreement,

arising from the mere fact that he was president of the defendant corporation. **[5]** While such presumption does not arise, it may more readily be inferred from circumstances proved that the president of a corporation is clothed with authority to make a particular contract than one who stands in no official relation to the corporation. In other words, the fact that one is president may be considered with other circumstances shown in determining whether such person was authorized to act for the corporation. The statement in the opinion that ''Smith, being the principal officer of the corporation, must be presumed to have had the implied power to make all contracts which are essential to the successful prosecution of the business'' must be understood in the light of the evidence showing his activities in the conduct of the defendant's affairs and the latter's attitude toward the same. Smith arranged for the lease to Tominaga of the defendant's lands and, pursuant to defendant's letter to plaintiffs, paid Tominaga's bill with a company check. When asked if he usually carried company checks with him, he testified: ''I generally carry some blank checks, because when I am buying hay around in the country, I have to pay the farmer a deposit, that is why I carry blank checks.'' As stated in the opinion, the defendant must be presumed to have had knowledge of Smith's agreement in its behalf with the plaintiffs. (*Newell-Murdoch Realty Co.* v. *Wickham,* 183 Cal. 39 [190 Pac. 359].) It received quarterly statements showing that the meat furnished to Tominaga was being charged to the defendant. With all this knowledge, it remained silent for nine months. Under appropriate pleadings, the defendant would have been estopped by its conduct from disclaiming liability. **[6]** Independent of any question of estoppel, the defendant's silence is evidence of actual authority in Smith to make the agreement. Even in a criminal case the silence of a defendant when he ought to speak is evidence that the fact is in accordance with the statement which he fails to deny. It cannot be less in a civil action. The defendant offered no evidence whatever to prove that Smith was not authorized to make the contract. While Smith was a witness for defendant at the trial, he testified to nothing from which even an inference could be drawn that he acted without authority. While the burden of showing authority

rested on the plaintiffs, yet, in view of the rule that "evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict," the plaintiff must be held to have sustained the burden to the extent of proving a *prima facie* case.

The petition for a rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 3, 1922.

All the Justices concurred, except Lawlor, J., and Shurtleff, J., who were absent.