FITCHBURG YARN CO. *vs.* HOPE WEBBING CO.

JANUARY 15, 1925.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

STEARNS, J. This is an action on the case in assumpsit brought by the Fitchburg Yarn Company against the Hope Webbing Company to recover damages for the breach of a contract, made March 30, 1920, by and between the two corporations. Jury trial having been waived, the case was tried by a justice of the Superior Court who gave a decision for the plaintiff for $58,229.26. The case is here on defendant's bill of exceptions, whereby the principal exception is taken to the amount of damages awarded.

By the contract, plaintiff agreed to sell and defendant agreed to buy 108,000 pounds of "Thirties single" "carded peeler" yarn at $1.30 per pound; deliveries to be made, 2,000 pounds weekly in May, 4,000 pounds weekly in June and 5,000 pounds weekly until the completion of the order; the yarn to be wound upon beams, with the number of separate threads or "ends" to be in accordance with the specifications. This particular part of the contract, as stated by defendant in its letter to plaintiff of March 30th closing the contract, is as follows: "specifications will be given you as required." In this letter defendant gave specifications for 50 beams of 448 ends and 28 beams of 418 ends, in order, as stated, that plaintiff might have some specifications for its immediate requirements. At least two weeks' notice to plaintiff of the specifications required by defendant was necessary to enable the plaintiff to fill any order.

Defendant is a manufacturer of yarn webbing. Plaintiff manufactures one kind of yarn only, unbleached cotton yarn. This yarn is usually easily obtainable from other mills and is a staple product generally dealt in upon the

market. The size of the beams was 54 inches. The description "Thirties single" meant the size of the yarn (thirties) and single threads. The character, quality and amount of the yarn and the form of winding was thus definitely fixed by the contract; defendant thereafter could only designate the number of threads to be wound on a beam. The specifications to be given by defendant related not to the manufacture of the yarn, but to the number of threads to be wound upon a beam. The contract thus was one for the sale and not for the manufacture of yarn.

July 6, 1920, defendant wrote to plaintiff and cautioned it against shipping the yarn faster than specified in the contract, and stated it would prefer that plaintiff should ship a smaller quantity than specified for the reason that defendant "was getting some holdups on this line of goods." July 16, defendant again wrote to plaintiff that it had been trying to secure specifications from its customer to enable it to give plaintiff specifications to continue shipments on the contract; that it had been receiving requests to hold up shipment and "it now appears that we will be unable to secure any further specifications for you for 60 days. We will however continue to press our customers for such specifications as will help us both. You will kindly enter your further warping specifications, being all that we can send you at the present time," and ordered 11 beams of 460 and 480 ends, 42,000 yards in all. This and the first order were promptly filled by plaintiff and paid for by defendant, the last deliveries being made in October, 1920. In reply to this letter of July 16, plaintiff, on July 17, after thanking defendant for specifications received, wrote "note you will not be able to send us further specifications before Sept. Sixteenth;" to this defendant, by letter of July 20, wrote "we have for acknowledgment your letter of July 17th and wish to express our appreciation of extension of delivery against our contract for 30/1 carded peeler on beams. No doubt you are fully aware of the situation, which is the direct result of our being unable to send you further specifications

at present. We, however, hope that we will be able to send you more specifications before September 16th, and this we are going to do if it is possible." The balance due under the contract of 74,451 pounds of yarn has never been accepted by defendant nor have any specifications therefor ever been given. It is for defendant's failure and refusal to give specifications and to take this balance that plaintiff now brings suit.

Early in the summer of 1920, there was a sudden and marked falling off in business throughout the country. Thereafter business conditions went from bad to worse, and extreme depression in business continued for several years. In August or September, 1920, the market for this yarn had broken; the price had fallen to 59 or 60 cents a pound, and with slight fluctuations continued at approximately this price for several years. Defendant bought this yarn to supply the needs of one customer with whom it had a large contract. When the market for yarn broke, defendant's customer cancelled its order given to defendant, and defendant thereafter sought to escape a loss by inducing plaintiff to consent to make concessions on the contract price. This, plaintiff steadfastly refused to do. Defendant apparently hesitated to break its contract outright but its conduct indicates that it hoped by delay and dickering to escape a loss in whole or in part. Plaintiff was ready, willing and able at all times to fulfill the contract; it was willing to assist defendant as requested, by not insisting on immediate specifications; but at intervals plaintiff continued to ask for specifications. The parties by conference and correspondence at various times considered the question of specifications and deliveries, but nothing was accomplished. Defendant claims that it broke the contract sometime, not definitely fixed, prior to November 1, 1920; that the extension of time for making specifications, which it asked for by letter of July 16, which was assented to by plaintiff, was limited strictly to sixty days after July 16; and that its failure at the expiration of sixty days to make specifications

was a breach of the contract at that time and that damages should be assessed as of that time. Plaintiff claims that the extension asked for was never limited until, by letters of May 10 and June 18, 1923, plaintiff finally demanded that specifications be given to it by July 1, 1923, and that, as no specifications were then given, the contract was broken on July 1, 1923.

The trial justice found as matters of fact that the contract was never broken by an absolute refusal by defendant to give specifications, until July 1, 1923, at which time the breach of contract occurred; that until that time both parties by their conduct and correspondence considered the contract to be in full force and binding on each. The evidence sustains these findings of fact. Before any breach of the contract or the time for performance as fixed by the contract had arrived, defendant, for its own benefit, secured from the vendor an extension of time for giving specifications and the receipt of deliveries. That this extension was not intended to be limited to sixty days after July 16 is clear, not only from the correspondence already referred to but from subsequent conduct and correspondence of the parties; for example, January 6, 1921, defendant wrote plaintiff that its secretary and general manager would like to have an interview with the president of plaintiff company; that they "would like to go over our contract obligations with you. . . . We are trying to keep a few of our looms running, and would like to do this for the benefit of keeping our organization intact, thus putting some of the goods into stock . . ." In this same month of January, defendant, in an interview with plaintiff after it had failed to secure any concession on price from plaintiff, asked permission of the latter to buy yarn of the kind called for by the contract from other parties at a reduced price, in order that it might run some of its looms on yarn bought at the low market price then prevailing. To this course plaintiff made no objection but it refused to make any price concessions on its contract.

Plaintiff might then have brought suit at any time as it was not bound to give any further extension. Its long delay in asserting its rights under the contract was quite likely, as stated by a witness, due to its fear of losing future business with defendant, which was an old and valued customer. But as the extension of time for specifications and deliveries was at defendant's request and for its benefit, it can not with justice complain of such delay. To hold otherwise would be unjust to plaintiff and would enable defendant to profit by its own wrong. This is a case of voluntary waiting by the vendor for the convenience of the vendee. The damages are to be assessed as held in the recent case of *S. M. P. Corp.* v. *Wood*, 44 R. I. 409, at the time when the voluntary extension comes to an end, in this case, on July 1, 1923. The measure of damages, as correctly applied by the trial justice, was the difference between the contract price ($1.30 a pound) and the market price of ($.54 a pound) at the time when the goods ought to have been accepted. (Gen. Laws, C. 309, s. 2.)

All of defendant's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment on the decision for the plaintiff.

*Curtis, Matteson, Boss & Letts. Henry M. Boss, Jr., Ira L. Letts, Peirce H. Brereton,* for plaintiff.

*Hinckley, Allen, Tillinghast & Phillips. Frank L. Hinckley, Abbott Phillips, Clifford A. Kingsley, Roger T. Clapp, for* defendant.