[Civ. No. 9251. Second Appellate District, Division One.—November 6,
1935.]

CARSTENS PACKING COMPANY (a Corporation), Re-
spondent, v. ROBERT MILLER, Appellant.

Wilcox & Judson, Fred W. Heatherly, Joe Orloff, John N. Metcalf and William Katz for Appellant.

William A. Freeman and Edward Flam for Respondent.

SHINN, J., *pro tem.*—Defendant appeals from a judgment for damages resulting from an alleged breach of contract to purchase 138,000 pounds of hog hair. The contract was in the form of correspondence between plaintiff, operator of packing houses at Tacoma and Seattle, and defendant, a processor at Los Angeles of curled hair. This correspondence was initiated by defendant personally in February, 1929, and concluded by R. S. Braun, an employee of defendant, in June of the same year.

■ Appellant's first contention is that he did not authorize or have knowledge of Braun's purchase of the goods and that he did not ratify the purchase, all of which issues the court found in plaintiff's favor. These findings, in our opinion, are not without support in the evidence. Defendant spent most of his time at a ranch located near Los Angeles, but came in to his place of business at least once a week. He testified that during his absence Braun had charge of the business. Braun testified that he discussed with defendant the matter of the delivery of the goods purchased shortly after the contract was made. This evidence and corroborating circumstances, together with defendant's acceptance and payment for part of the goods covered by the contract, to be discussed later, led reasonably to the court's conclusion that Braun's acts were not unauthorized. ■ .Even though the trial court had been in doubt as to defendant's actual knowledge of Braun's acts in the conduct of the business, we think defendant could not have escaped liability for those acts in view of the fact, as testified to by defendant, that Braun had charge of the business the greater part of the time. The contract with plaintiff was within the scope of the apparent authority which defendant allowed Braun to assume and exercise. It would be unjust to allow defendant to shift the loss occasioned by his own acts to the plaintiff, who dealt with Braun in good faith, rightfully assuming that Braun was defendant's duly authorized agent. (*Henry Cowell Lime & Cement Co.* v. *Farmers & Merchants Nat. Bank of Santa Cruz*, 82 Cal. App. 519 [255 Pac. 881]; *Producers Fruit Co.* v. *Goddard*, 75 Cal. App. 737 [243 Pac. 686].)

■ It was not necessary that Braun's authority should be evidenced by a writing. On May 29, 1929, in the name of

defendant and over his own signature, Braun wrote plaintiff offering 60 cents a dozen for cattle switches and 7 cents a pound net weight f. o. b. Los Angeles for hog hair, which offer was accepted by plaintiff by letter dated June 1, 1929. On June 4th Braun asked for shipment of the cattle switches on hand, but on account of shortage of storage space asked that shipment of the hog hair be deferred until necessary warehouse space could be made available and inquired as to the quantity of hog hair on hand. Plaintiff replied to that letter, and to subsequent inquiry, that there were 450 or 475 bales of hair stored on the dock, weighing approximately 150,000 pounds. The cattle switches were shipped July 18, 1929, and defendant paid for the same the full purchase price of $1500. Plaintiff thereafter insisted by letters that delivery of the hog hair be accepted, but in reply to these several requests Braun asked for more time to accept delivery. On December 19, 1929, defendant wrote plaintiff stating that he did not know whether he had signed a contract to purchase the hog hair but that he could not take the hog hair nor allow plaintiff to draw on him for the same.

It is the contention of respondent that the receipt of part of the goods sold and the payment of part of the purchase money did away with the necessity for a written agreement for the purchase of the goods, under former section 1624 (4) of the Civil Code, and, therefore, made it unnecessary that the authority of the agent should have been in writing. If the contract was entire it was an agreement to purchase all of the goods and the partial performance would have made it a binding contract even .though it was not in writing. Defendant contends that it was his privilege to buy either the cattle switches or the hog hair at the prices quoted, separately from the other, and he invokes the rule that where a distinct price is apportioned to each of several distinct items according to their value and is not fixed at a round sum for the whole, the contract will be regarded as severable. (*Herzog* v. *Purdy*, 119 Cal. 99 [51 Pac. 27]; *Sterling* v. *Gregory*, 149 Cal. 117 [85 Pac. 305]; *Norris* v. *Harris*, 15 Cal. 226; *More* v. *Bonnet*, 40 Cal. 251 [6 Am. Rep. 621].) Although the letters did not state affirmatively that the negotiations related to the goods as a whole they sufficiently show that both buyer and seller so understood them. The conduct of the parties points to the same conclusion and it is well settled

that acts of the parties in treating a contract as entire or severable have an important bearing upon its construction. (13 Cor. Jur. 564.) On February 26th, Miller had written to inquire whether plaintiff would sell him again its accumulation of cattle switches and hog hair and what the price would be. Plaintiff answered quoting 60 cents per dozen for cattle switches and 8 cents a pound for hog hair delivered wharf, Tacoma. Defendant wrote on March 11, 1929, stating that he was willing to pay 60 cents per dozen for cattle switches but that the price on hog hair seemed high, and offering 7½ cents per pound f. o. b. Los Angeles. Plaintiff replied, offering the hog hair at 8 cents per pound, delivered wharf at Tacoma, for a year's contract on the hair, and offering to ship the switches and hair by steamer. Defendant did not reply. Correspondence was resumed May 18th and thereafter was conducted between plaintiff and Braun and, as we have seen, resulted in Braun's offer, which was accepted by plaintiff. Defendant was willing to buy the cattle switches at 60 cents when that price was first quoted, and so advised plaintiff, but he did not offer to purchase them separately, nor did plaintiff offer to sell them separately, then, or at any other time. Negotiations were continued dealing with the two articles as a whole. The quotation of separate prices was necessary to render the total price capable of ascertainment and did not necessarily indicate an intention to sell a part only of the goods. The correspondence in its entirety is clearly inconsistent with the claim that the contract of purchase was severable. We think the trial court would not have been warranted in holding that either party intended a sale of a part of the goods where throughout the entire correspondence no such intention was expressed on either side and a contrary intention was reasonably to be inferred.

■ Appellant's next contention is that the contract was indefinite, in that it failed to stipulate the quantity or quality of hair purchased; but in this contention we think appellant takes too narrow a view of the entire transaction. It is true that defendant's offer and plaintiff's acceptance, which furnished the basis of the contract were indefinite as to quantity, but from the entire correspondence it is clear that the purchase related to the accumulation of hair at the time of the purchase. Defendant was informed as to the number of bales ready for shipment and that the amount on hand weighed

150,000 pounds. Defendant made no objection to plaintiff's statement of the quantity on hand. The evidence shows that plaintiff resold 150,000 pounds. The court computed the total weight according to memoranda made by plaintiff's employees at 138,000 pounds and gave judgment accordingly. Defendant produced no evidence as to the amount of hair plaintiff had on hand at the time of the contract. While no witness testified directly as to the quantity of hair on hand, plaintiff's written statement to defendant, acquiesced in by the latter, and plaintiff's repeated offers to ship the hair, together with the testimony that 150,000 pounds were resold, were sufficient to show, in the absence of contradictory evidence, that plaintiff did have on hand at least 138,000 pounds of hair. We cannot regard this alleged deficiency in plaintiff's proof as furnishing a ground for reversal of the judgment where it appears not improbable that upon a retrial of the case and upon more complete proof, plaintiff's damage would be found equal to if not in excess of the amount for which judgment was given. The quality of the hog hair was sufficiently specified by plaintiff's written statement that it was "sweet and clean" and the best that could be processed.

The judgment is affirmed.

Houser, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 27, 1935.