[Civ. No. 11735.   Second Appellate District, Division One.—April 20, 1939.]

H. J. PLATT, Respondent, v. UNION PACKING COM-PANY (a Corporation), Appellant.

Benjamin W. Shipman for Appellant.

Mathes & Sheppard and George R. Richter, Jr., for Respondent.

WHITE, J.—This action was brought to recover damages for an alleged breach by defendant, a corporation, of a contract to purchase cattle. Judgment passed for plaintiff and defendant appeals.

Plaintiff based his right of action upon an oral agreement claimed to have been made with defendant through its agents, under the terms of which the defendant agreed to purchase approximately 350 head of steers at an agreed price of $8.50 per hundredweight, which would aggregate about $30,000. The agreement allegedly was entered into on May 13, 1935, at a time when the cattle were being fed for market by plaintiff at the Anderson ranch near Chandler, Arizona, and were in charge of plaintiff's son for the purpose of sale. On May 15, 1935, fifty-six head of steers were shipped to defendant and paid for at the price of $8.50 per hundredweight, while on June 17th two additional carloads were likewise shipped to defendant and paid for as in the first instance. On June 20th defendant corporation advised plaintiff that it would not take the remainder of the steers at the price of $8.50 per hundredweight. Plaintiff recovered

judgment for damages for breach of the contract to take the 237 additional head of cattle. The court awarded damages upon the theory that the breach of the contract occurred on June 20, 1935.

Stating the facts most favorably to plaintiff, as we must do when the findings are in his favor, the circumstances attendant upon the making of the agreement in question were substantially as follows: For some years plaintiff had been a cattle raiser and feeder in Arizona, while defendant corporation was engaged in the business of dressing and packing meat, in connection with which it purchased cattle. Adolph Miller was president and general manager of defendant corporation, and Nate Miller, his son, was employed as a cattle buyer. Tom King was a commission buyer operating out of Phoenix, Arizona, and on previous occasions had purchased cattle for defendant, the latter of whom had provided King with printed forms of draft upon which he was denominated "purchasing agent" and which he used as a medium of payment for cattle purchased by him in behalf of defendant. The relationship of Tom King and Nate Miller with defendant was known to plaintiff and his son and agent, Harvey Platt. In the month of May, 1935, defendant, through its general manager, advised Tom King of the need for some fed steers, and in connection therewith Nate Miller went to Arizona, where he joined King, and the two of them, on May 13th, inspected the plaintiff's steers at the Anderson ranch. Upon that occasion inquiry was made by King and Miller as to the price wanted for the steers, how they would be shipped, and the length of time that would be given defendant to take the cattle. Plaintiff's son and agent informed King and Miller that the price would be $8.50 per hundredweight, f. o. b. shipping point, with a four per cent deduction of weight for shrinkage, and that plaintiff would give defendant thirty days within which to take the cattle. Upon objection of King and Miller to the condition of some of the steers, it was agreed that one steer would be excluded, thus leaving 351 head to be shipped. On the evening of that day Nate Miller communicated by telephone with his father, defendant's president and general manager, advising the latter that he had bought for defendant corporation the 351 head of plaintiff's steers upon the terms hereinbefore set forth; and on the following day King discussed the purchase with the

defendant's general manager. On May 15th fifty-six head of the steers were weighed and billed to defendant, and paid for as aforesaid. Following the making of the agreement, the market price of steers commenced to decline steadily, until during the week of June 7th to June 14th the price had declined approximately twenty-five cents per hundredweight. During this period of time King advised plaintiff that defendant wanted and would take the steers, but that deliveries were to be delayed for various ascribed reasons. On June 10th plaintiff wrote directly to defendant, asking when the latter expected to take the balance of the cattle, but received no reply. On June 12th and 13th, plaintiff had conversations with defendant's general manager in Los Angeles, upon which occasion, for the first time, the authority of King and Nate Miller to make the contract in question was questioned by defendant. Upon this occasion defendant's general manager stated that he was going to Arizona on June 14th, and he did arrive at the Anderson ranch on June 16th for an inspection of the cattle, following which two more carloads were shipped and paid for. At this time defendant's general manager informed plaintiff's son and agent that upon his return to Los Angeles he would discuss with plaintiff a date for taking the remainder of the steers. However, on June 20th, defendant's general manager advised plaintiff that the former would not take the remainder of the steers at the price of $8.50 per hundredweight, which resulted in the commencement of this action.

Appellant's first point is that the alleged oral contract for the purchase of the 351 head of cattle at a price approximating $30,000 was illegal and in contravention of the statute of frauds, for the reason that no sufficient showing was made at the trial of a mutual understanding that the delivery of and payment for the stock shipped by plaintiff to defendant should constitute a part performance of the verbal contract in its entirety. ■ The intention of contracting parties must be determined by their words, acts, conduct and the circumstances existing at the time the agreement was brought into being. It is well settled in principle and by a long line of authorities that a part delivery of personal property subsequent to the sale thereof satisfies the statute of frauds. The Arizona statute of frauds (sec. 2808, Rev. Code of Arizona) is similar to our own (sec. 1724, Civ. Code; sec.

1973a, Code Civ. Proc.), and thereunder any act of the vendee manifesting an intention on his part to accept the chattels or some part thereof places the transaction without the pale of the statute of frauds, and a selection of portions of the vended property may be evidence of an acceptance.

In the case before us, appellant's agents selected the cattle constituting each of the two shipments and payments were made therefor at the price and in accordance with the terms of the original agreement. And as the original oral agreement was the only agreement between the parties under which the cattle so delivered could have been accepted by appellant, it follows that the finding of the trial court that such acceptance by appellant of the delivered property took the original oral agreement out of the statute of frauds finds ample support in the evidence. (*King* v. *Globe Grain etc. Co.*, 58 Cal. App. 105 [208 Pac. 166]; *Merrill* v. *Kohlberg*, 29 Cal. App. 382 [155 Pac. 824]; *Carstens Packing Co.* v. *Miller*, 10 Cal. App. (2d) 48 [51, Pac. (2d) 161].) It is not required, in order to take an oral contract out of the statute of frauds, that a partial delivery must be made at the time of the making of the oral agreement. (*Meyers* v. *Kaufman*, 110 Misc. 321 [180 N. Y. Supp. 403].)

Section 2116 of the Revised Code of Arizona, providing that upon the sale or transfer of any meat animals, the delivery of such animals shall be accompanied by a written bill of sale from the vendor to the party purchasing, and that upon the trial of any person charged with the theft, unlawful possession, etc., of any such animal, the possession under claim of ownership without such bill of sale shall be *prima facie* evidence against the accused that such possession was illegal, has no application to the case at bar, because appellant's failure to obtain a bill of sale from the respondent for the cattle shipped to and paid for by appellant does not in anywise affect the appellant's absolute title thereto as against any claims of respondent.

The next point made by appellant is that the record is barren of any evidence sufficient to support the trial court's finding that Tom King and Nate Miller were the authorized agents of appellant corporation and vested with authority on behalf of appellant to enter into the contract on its behalf. Appellant earnestly urges that the authority of King and Miller was limited to the right to purchase only

two carloads of "fat" cattle. It would serve no useful purpose to discuss in this opinion at great length the evidence given at the trial in regard to the existence of an agency. Bearing in mind the well-settled rule that all conflicts in the evidence are for the trial court's consideration, and that therefore, notwithstanding such conflict, the finding that an authorized agency did exist must be sustained by the appellate court if there is sufficient evidence to support it, a brief statement of such evidence will be helpful. For four or five years antedating the negotiations here in question, Tom King had been buying cattle for appellant. On these occasions, when in need of cattle, appellant's general manager would advise King of the kind of cattle desired. King would inspect available stock and would purchase such cattle as in his judgment met appellant's requirements. King would pay for such cattle with drafts drawn upon appellant, forms of which were furnished King by appellant and which bore appellant's corporate name, beneath which King, after filling out the draft, would sign his name on a line designating him as purchasing agent. The other alleged agent, Nate Miller, was a son of appellant's general manager, admittedly employed by appellant, and he notified appellant by telephone on May 13th of the purchase of the cattle and the price to be paid therefor. Further, the authority of King and Nate Miller remained unquestioned from May 13 to June 13, 1935, and appellant's silence is evidence of actual authority in King and Nate Miller to consummate the agreement. (*Jan Wai* v. *Smith-Riddell Co.*, 55 Cal. App. 59, 66 [202 Pac. 952].)

Appellant's next two contentions (1) that the finding of the trial court that the purchase was not made upon the promise and representation of respondent that the steers would be fed, fattened and conditioned by the respondent until such time as they would be "fat steers," and (2) that the finding that all of the steers were to be taken within thirty days, find no support in the evidence, must fall before the elementary rule that in examining the sufficiency of the evidence to support a questioned finding all intendments and inferences are in favor of the finding of the trial court and that all conflicts and discrepancies must be resolved on appeal in support of the trial court's finding.

Appellant's next claim, that there was no meeting of the minds of the contracting parties as to the time within

which respondent was to make the cattle "fat", and that appellant's understanding and intent was that it was to accept the cattle only as they became "fat" and not necessarily within any thirty-day limitation of time, cannot be sustained. The mutuality of assent requisite to the formation of a contract must be gathered from the language and conduct of the parties, and the law imputes to a person the intention corresponding to the reasonable meaning of his words and acts. There is in the record before us evidence which, if believed, warranted the trial court in finding that by word and act all parties to the contract were in agreement that delivery should be made in thirty days. What may have been the real but unexpressed state of the minds of appellant's agents on the subject is immaterial. In the face of conflicting evidence upon this issue, we are not authorized, as heretofore stated, on appeal to invade the field of the trier of facts.

What we have just said applies with equal force to the next ground of appeal, which is that the finding of the trial court that there was an agreed extension of time for the performance of the agreement is without evidentiary support. The testimony as to the delay in deliveries at appellant's suggestion because the latter was "full up" with cattle, and again until appellant's general manager could go to Arizona, is typical of the character of testimony in the record which supports this particular finding of the court.

There is nothing in the final point made by appellant, that the court erred in holding and concluding that the breach, if any, on the part of appellant occurred on June 20th. In support of this claim, it is asserted that this date was thirty-eight days after the making of the oral agreement and eight days after the thirty-day period which the court found was the term of the contract; and further, that appellant was under no obligation to take the cattle, except in installments as they became "fat", and that the "time or times when the goods ought to have been accepted" must be looked to for the purpose of determining the measure of damages for the buyer's breach. Without question, the contract was entire. (*Norrington* v. *Wright*, 115 U. S. 188 [6 Sup. Ct. 12, 29 L. Ed. 366].) The provisions as to shipping the cattle in different weeks and at different times and as to paying for each shipment upon its delivery, do not split up the contract

into as many contracts as there shall be shipments or deliveries. It was only when the repudiation by appellant took the form it did on June 20th, that the breach occurred. Respondent was, therefore, clearly entitled to recover the difference between the contract price and the market price of the cattle remaining undelivered on June 20th, the date of the breach.

The judgment is therefore affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 17, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 19, 1939.