[Civ. No. 17830. Second Dist., Div. Three. Mar. 14, 1951.]

RUBE F. SAMUELS, Respondent, v. L. A. MATTRESS COMPANY (a Corporation), Appellant.

Newby, Holder & Newby for Appellant.

Holbrook & Tarr, Leslie R. Tarr and Freda B. Walbrecht for Respondent.

BARTLETT, J. pro tem.—The plaintiff, a cotton broker, brought this action against A. V. Hamilton, doing business under the firm name and style of Los Angeles Mattress and Renovating Company, for damages for the breach of an oral contract to purchase 50 bales of cotton linters at a price of 17¼ cents per linter of which 5 bales were delivered. The court rendered judgment in favor of the plaintiff, the respondent here, for $2,041.81 from which the defendant has appealed.

Appellant contends that there was no contract to buy and sell cotton in this case and attacks the finding of the court that there was, as not being sustained by the evidence. There was a decided conflict in the testimony but there is substantial evidence to support the court's finding. In his argument on the matter appellant calls attention to the fact that the day following the conversation respondent sent to appellant confirmation of the conversation had with him, in duplicate, signed by the respondent which had printed on it "Please sign pink copy and return at once" but that appellant neither signed it nor returned it. Respondent testified that it was his intention to have Hamilton sign the paper and return it. Appellant says in his brief: "From this testimony it is conclusive that

Samuels did not consider himself bound to any agreement whatsoever unless Hamilton complied with his request.'' Inasmuch as the terms of the contract had been definitely agreed upon orally the day before and Samuels testified to his many subsequent efforts to comply with the contract and that thereafter appellant again confirmed it, the court was bound to draw no such inference. ■ It is our duty where there is substantial evidence to support the finding, not only to resolve all conflicts in favor of the finding, but to indulge in all legitimate inferences which may support it. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].)

■ Appellant's next contention is that the contract is invalid under the provisions of subdivision 1 of section 1724 of the Civil Code which provides that the sale of goods of the value of $500 or more shall not be enforceable unless the buyer shall accept part of the goods so contracted to be sold and actually receive the same. The court found: ''[t]hat it is true that on or about July 28, 1947, defendant took delivery of 5 bales of cotton linters and paid therefor the sum of $462.30, said 5 bales weighing approximately 2,680 pounds.'' The court further found: ''[t]hat said delivery of said 5 bales of cotton linters was made and taken as part performance of said contract for the purchase of said 50 bales of cotten linters.'' These findings showed a clear compliance with the provisions of the code section just quoted and were supported by a preponderance of the evidence.

■ Appellant's final contention is that assuming there was an enforceable contract, the plaintiff was not damaged. Under the terms of the original contract some of the linters were to be delivered as follows: 25 bales in January, 1947, and 25 bales in February, 1947. No cotton linters were delivered until in July, 1947, when appellant accepted delivery of 5 bales of linters of the 50 bales of linters contracted for and paid for them at the contract price. Taking the conflicting evidence in the light most favorable to the respondent as we should, shortly after the contract was entered into the respondent began requesting appellant to accept at least a portion of the bales of linters contracted for. On at least six different occasions before the acceptance of the 5 bales by appellant in July, respondent requested appellant to accept delivery but on each occasion he was put off with excuses that appellant did not at that time have the money to buy, that he had no room to store them and the like. On the fifth occasion, May

15, 1947, after making one of his usual excuses, the respondent said: "As far as I am concerned, the contract is still in order." Finally, as the court found, respondent notified defendant that unless he accepted the remaining 45 bales he would be obliged to dispose of them and hold appellant for the loss sustained which he did on December 12, 1947. The court then found that the difference in the market value on December 12, 1947 and December 3, 1946, amounted to $2,041.81. Appellant contends that the damages should have been fixed as of the market value of the cotton linters in January and February of 1947 and that if it had been so taken, respondent would have suffered no damage. ▮ However, contracts of this type are entire, not severable. (*Carstens Packing Co.* v. *Miller*, 10 Cal.App.2d 48 [51 P.2d 161].) Appellant cites only one case, that of *Rice* v. *Schmid*, 18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589], and quotes the following language found on page 388 of the decision: "Under Civil Code, sec. 1784, plaintiff is entitled to recover the difference between the contract price and the market price at the time when the goods should have been accepted." Immediately following this quotation is the following which appellant does not quote (p. 388): "The contract by its terms was automatically extended despite the defendants' failure to give further shipping instructions, and since there was no repudiation of the contract by them, their obligation to accept the goods continued until the plaintiff exercised his option to terminate the contract. Therefore, the damages should be the difference between the contract price and the market price on the date of final termination of the contract. (*Cf. Fitchburg Yarn Co.* v. *Hope Webbing Co.*, 46 R.I. 290 [127 A. 148].)" ▮ Under the facts that we have set forth, we agree with the trial court that the breach of the contract took place on December 12, 1947, when respondent gave the notice to appellant which we have related and appellant repudiated the contract by not accepting the goods. It was the market price of the goods at this date of the breach of the contract which was the proper measure of damages and that is exactly the measure of damages which the court used. The facts and reasoning of the court in the following quotation are applicable here: "There is nothing in the final point made by appellant, that the court erred in holding and concluding that the breach, if any, on the part of appellant occurred on June 20th. In support of this claim, it is asserted that this date was thirty-eight days after the making of the oral agreement and eight days after the thirty-

day period which the court found was the term of the contract; and further, that appellant was under no obligation to take the cattle, except in installments as they become 'fat', and that the 'time or times when the goods ought to have been accepted' must be looked to for the purpose of determining the measure of damages for the buyer's breach. Without question, the contract was entire. (*Norrington* v. *Wright*, 115 U. S. 188 [6 S.Ct. 12, 29 L.Ed. 366].) The provisions as to shipping the cattle in different weeks and at different times and as to paying for each shipment upon its delivery, do not split up the contract into as many contracts as there shall be shipments or deliveries. It was only when the repudiation by appellant took the form it did on June 20th, that the breach occurred. Respondent was, therefore, clearly entitled to recover the difference between the contract price and the market price of the cattle remaining undelivered on June 20th, the date of the breach." (*Platt* v. *Union Packing Co.*, 32 Cal.App.2d 329, 336, 337 [89 P.2d 662].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied April 3, 1951.