[Civ. No. 1133. First Appellate District.—February 28, 1913.]

## HENRIETTA S. DEAN, Respondent, v. GEORGE W. HAWES, Appellant.

VENDOR AND VENDEE—TENDER OF DEED OF RECONVEYANCE—WHEN UN-
NECESSARY.—Where contemporaneously with the execution of a deed
the parties thereto entered into an agreement for a reconveyance,
but it becomes clear that the tender of a deed of reconveyance by
one party will be an idle and useless act, because the other party has
refused to perform his contract and has confessed financial inability
to do so, it is unnecessary to make an actual tender in order to put
him in default.

ID.—MEASURE OF DAMAGES FOR BREACH OF CONTRACT TO REPURCHASE.—
The sum recoverable for the breach of an agreement to purchase real
estate is, under section 3307 of the Civil Code, the difference between
the contract price and the market value at the time of the breach.
This rule is here applied to a breach of contract to repurchase.

APPEAL from a judgment of the Superior Court of Santa Cruz County and from an order refusing a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

George W. Hawes, *in pro per.*, for Appellant.

Charles B. Younger, for Respondent.

LENNON, P. J.—In this action the plaintiff sued for and, upon the verdict of a jury, procured a judgment against the defendant in the sum of six hundred dollars as damages for the alleged breach of an agreement to purchase real estate. The defendant has appealed from the judgment, and from an order denying a new trial, upon the judgment-roll and a statement of the case which purports to show all of the evidence taken upon the trial.

The plaintiff's cause of action as pleaded is founded substantially upon the following facts: The defendant, in consideration of the sum of eight hundred dollars, executed to plaintiff a deed, dated October 31, 1908, purporting to convey to plaintiff the defendant's undivided one-half interest in certain real property situate in the county of Santa Cruz. The plaintiff has ever since been the owner in fee of the interest so conveyed to her free and clear of all encumbrances. Contemporaneously with the execution of the deed referred to the defendant made and delivered to plaintiff the following memorandum of agreement:

"SANTA CRUZ, CAL., October 31, 1908.

"This is to certify that I have this day sold to Henrietta S. Dean a one-half interest in a certain tract of land. Now therefore, should she so desire I hereby agree to take the land back, allowing her ten per cent on the investment, at any time after one year and within two years from this date. The party owning the other half-interest is W. H. Lamb; the amount is six acres."

(Signed)          GEORGE W. HAWES.

On November 1, 1909, the plaintiff accepted the option of reconveying to the defendant the land described in the defendant's deed and memorandum of agreement of October 31, 1908, by so informing the defendant, and at the same time offered to make a deed of the property to defendant upon the payment of the sum of eight hundred dollars, the original and agreed purchase price of the property, plus the sum of eighty dollars, which was the ten per cent profit provided for in the defendant's memorandum of agreement. Thereafter and from time to time the plaintiff offered upon the conditions stated to execute such deed to the defendant, but he declined and refused to accept plaintiff's offer, and finally repudiated the entire transaction.

The value to the plaintiff of the land sold to her was alleged at no time to be in excess of the sum of five hundred dollars; and because of this the plaintiff claimed that she was damaged by the defendant's breach of his agreement to purchase.

The defendant's answer in effect admitted the execution of the deed and the memorandum of agreement in connection therewith, but practically denied every other material allegation of the complaint.

At the outset defendant contends that the plaintiff's complaint shows that the transaction in suit was intended as a mortgage, and that the action was one to foreclose a mortgage rather than one for damages in breach of contract. In support of this contention the defendant insists that the plaintiff's complaint and proof proceeded upon the theory that the deed from the defendant to plaintiff was intended as a mortgage.

The complaint speaks for itself, and obviously it is not susceptible of the construction contended for by the defendant; and the evidence upon the whole case shows that the action was defended, tried, and determined upon the theory that it was one solely for damages arising out of the breach of a contract.

The sufficiency of the evidence to support the verdict and judgment is challenged in several particulars; but only two of the specifications of insufficiency are worthy of notice. The first involves the point that the defendant was never in default because, as it is alleged, the plaintiff's evidence does not show a tender to the defendant of a good and sufficient deed of reconveyance within two years of the date of the original deed to the plaintiff. Conceding this to be so, the plaintiff's evidence on the other hand shows that upon the expiration of one year and within two years from the date of the agreement in question, she notified the defendant orally and in writing that she accepted the option to reconvey, and at the same time offered to make a deed to the defendant upon his compliance with the conditions of the option. The plaintiff's evidence further shows that from time to time thereafter she made repeated demands upon the defendant to fulfill his contract, but in each instance he refused because of his confessed financial inability to do so, and finally repudiated the entire transaction. It is very apparent from the conduct and attitude of the defendant (who, by the way, is an attorney at law and was the legal adviser of the plaintiff at the time of the transaction) that he never intended at any time prior to the commencement of the action to perform his contract with the plaintiff, and that if a deed from the plaintiff had been made and tendered to him by the plaintiff within the time specified in the contract it would not have been accepted. In brief, it is clear from the plaintiff's testimony that the tender

of a deed to the defendant would have been an idle and a useless act, and under such circumstances it was unnecessary to make such tender in order to put the defendant in default.

The second specification of the insufficiency of the evidence to support the verdict and judgment presents the point that the plaintiff wholly failed in her proof upon the issue of damages.

This point is well taken and necessitates a reversal of the judgment. The plaintiff's case was rested upon her testimony alone. Upon the subject of the value of the property at the time of the defendant's alleged breach of his contract she testified as follows: On direct examination—

"Question: What was the value of the property to you that Mr. Hawes has conveyed to you and does not want to take back?

"Answer: I really don't know how to answer the question. It is really not worth any money value to me. It was the money I wanted instead of land. . . .

"Question: The land then to you is of no value?

"Answer: I don't just hardly know how to answer it. I have it as security do you mean?

"Question: In other words, the land itself you don't want to own?

"Answer: No, I don't want the land at all.

"Question: You don't want to have the land at all?

"Answer: No.

"Question: In this complaint it is alleged that the value does not exceed $500 to you. Is that so or not?

"Answer: No, it is not.

Upon cross-examination—

"I don't know what the cash value of the property is nor what it was on October 31st, 1908. . . . I don't know what the value of the property between October 31, 1909, and October 31, 1910, was. I said the property was not worth to exceed $500 to me."

"Question: . . . Within two years after the 31st of October, 1908, what was this property worth to you?

"Answer: I don't know; I did not make an estimate; I wanted the money.

"Question: You don't know?

"Answer: No, I am not a real estate man and I don't know.

21 Cal. App.—23

"Question: You don't know?

"Answer: No, sir."

Aside from repetitions and volunteer statements of the witness, which latter were foreign to the question of value, the foregoing constitutes the entire testimony upon which the plaintiff depended for proof of the damage alleged to have been sustained by her because of the defendant's breach of the contract sued upon. And opposed to this was the evidence of the defendant, who testified positively that at the time of the execution of the deed from the defendant to plaintiff and at all times thereafter the property described therein was worth not less than one thousand dollars. In addition several other witnesses were called for the defendant, who testified that they knew the property and its value. They testified in effect that the property was worth from three hundred and fifty dollars to four hundred dollars per acre at the time of its sale to the plaintiff and at all times thereafter. Finally upon behalf of the defendant W. H. Lamb, "the party owning the other one-half interest," testified that he knew the property and its value; that it consisted of six acres, which on October 31, 1908, and at all times thereafter was worth three hundred dollars per acre. In other words, the uncontradicted evidence produced on behalf of the defendant was to the effect that the value of the three acres sold to plaintiff was at the time of the execution of the deed from defendant to plaintiff and at all times thereafter from nine hundred dollars to twelve hundred dollars.

The measure of damages in actions of this character is to be found in section 3307 of the Civil Code which declares that "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him."

In the presentation of the plaintiff's case her counsel evidently proceeded upon the theory that the code section just cited measures the damage for the breach of a contract to purchase real estate by the vendor's individual and whimsical notion of the value of the property to him in utter disregard of the price which it would bring in the open market. The trial court, as indicated by its rulings upon the admission

of evidence and in its charge to the jury, apparently acquiesced in this construction of the code section under consideration, and literally limited the damage caused by the breach of a contract to purchase real estate to the excess "over the value to him" with whom the contract was made, of the amount which would have been due upon performance of the contract.

That this construction of the code section in question was never contemplated by the legislature is manifest from the obvious injustice and absurdity following its application in the present case, wherein and whereby the plaintiff in effect was permitted to retain the ownership of land worth from nine hundred dollars to one thousand two hundred dollars, and at the same time was awarded damages in the sum of five hundred dollars for the breach of a contract to purchase the same land. Liberally construed in accordance with its spirit and the plain purpose of its enactment, the rule enunciated in that section means that in actions for damages for the breach of a contract such as is pleaded here the sum recoverable as compensation for the breach is the difference between the contract price and the market value of the land at the time of the breach. This in effect was the construction placed upon said section in the case of *Drew* v. *Pedlar*, 87 Cal. 443, [22 Am. St. Rep. 257, 25 Pac. 749], where it is said that "The general rule of damages on failure of the vendee to take the property purchased and pay for the same would be the actual loss sustained by the vendor thereby; which would ordinarily be the difference between the actual contract price and the actual value of the land at the time of the breach if the property shall have decreased in value."

Tested by this construction of the rule the plaintiff's case utterly failed to show that she was damaged by the breach complained of, as found by the jury, in the sum of five hundred dollars or in any other sum. Hers was the only testimony introduced upon her case to support the allegation and issue of damage; but, as has been shown, she did not even pretend to know what the actual value of the property was at any time, and her entire testimony upon this phase of the case was directed solely to the question as to what the value of the property was to her individually, and excluded all consideration of the price for which it could be sold in the

open market. Clearly such testimony did not meet the requirements of the rule stated, nor respond in any degree to the issue of damages. It must therefore be held that the plaintiff's case as presented and submitted to the jury was totally lacking in evidence upon a vital issue of the case; and in view of the positive testimony of the witnesses for the defendant upon the subject of value there is no escape from the conclusion that the verdict and judgment are not only not supported by the evidence, but are clearly contrary thereto. This phase of the case is disposed of by counsel for the plaintiff by the bald statement that the evidence upon the whole case is in substantial conflict; and that inasmuch as the jury, and the trial court upon a motion for a new trial, each saw fit to accept the testimony of the plaintiff rather than that of the witnesses for the defense, the judgment is not open to attack upon the ground of the insufficiency of the evidence to support it. In this connection it is urged that the jury and the trial court were justified in rejecting the testimony of the witnesses for the defense because, as it is claimed, their estimates of the value of the property were obviously inflated. The record before us does not justify the latter contention; nor does it appear that the testimony of the witnesses for the defense was so inherently improbable as to be unworthy of belief, and therefore it should not have been absolutely ignored either by the jury or the trial court.

However that may be, the record shows, as we have already indicated, a case not of conflicting evidence, but rather one wherein there is a total lack of evidence to support the cause of action pleaded and relied upon for a judgment; and assuming, without conceding, that the jury was justified in rejecting the proof presented upon behalf of the defendant, the fact remains nevertheless that the plaintiff wholly failed in her proof upon the issue of damage, and therefore upon the facts of the case as presented she should have been nonsuited, or the jury directed to bring in a verdict for the defendant.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

Hall, J. and Murphey, J., *pro tem.*, concurred.