[Civ. No. 3861. Second Appellate District, Division Two.—June 14, 1922.]

D. E. KING et al., Respondents, v. GLOBE GRAIN AND MILLING COMPANY (a Corporation), Appellant.

[1] CONTRACTS—SIGNATURE WITHOUT READING—MISREPRESENTATION AS TO CONTENTS—ESTOPPEL—REASONABLE DILIGENCE.—It is only in an extreme case that a court is warranted in holding that a party induced, through misrepresentation as to the purport of a document, to refrain from making examination of its contents, shall, nevertheless, be deemed to have given his assent to the document before its contents are in fact known to him. All that is required is that the party who is misled into signing an instrument in ignorance of its purport shall have exercised reasonable diligence.

[2] ID.—SALE OF BARLEY—WANT OF DESCRIPTION OF SUBJECT MATTER. An instrument reciting that the seller "has this day sold" and the buyer "has this day bought —— sacks of good marketable barley now being grown or located near" a given place is so indefinite and uncertain with reference to the subject matter of sale that it cannot be held to supersede a prior agreement between the parties which was complete in all its terms.

[3] ID.—STATUTE OF FRAUDS—PART PAYMENT—PARTIAL DELIVERY.— The original oral agreement between the parties having been the only complete agreement in existence at the time the buyer caused the subsequent invalid written agreement to be executed and paid a given sum of money on account of the purchase price of the barley, such oral agreement was taken out of the statute of frauds by said payment; but if such subsequent payment was insufficient to take the sale out of the statute of frauds, the buyer's subsequent receipt and acceptance of a portion of the barley covered by such oral agreement did take that contract out of the statute.

[4] ID.—BREACH BY BUYER—DAMAGES—WAREHOUSE CHARGES.—The sellers having delivered the barley to a given warehouse as required by the contract of sale, but the buyer having refused to accept it, and the sellers having been required to pay the warehouse charges in order to obtain possession of the barley and resell it at the highest market price obtainable at the nearest market, such charges constituted a proper item of damage in an action for damages for breach of contract.

APPEAL from a judgment of the Superior Court of Orange County. R. Y. Williams, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. G. Van Pelt for Appellant.

Scarborough, Forgy & Reinhaus for Respondents.

FINLAYSON, P. J.—This action was brought to recover damages for an alleged breach by defendant, a corporation, of a contract to purchase barley. Judgment passed for plaintiffs and defendant appeals.

The contract upon which plaintiffs base their right of action, a copy of which is set forth in the complaint, is as follows:

3. Receipt and acceptance to satisfy the statute of frauds when goods are in possession of purchaser at time of agreement, notes, 96 Am. St. Rep. 215; 13 Ann. Cas. 715; Ann. Cas. 1917B, 572; 11 L. R. A. (N. S.) 1186; 20 L. R. A. (N. S.) 498; L. R. A. 1916F, 393.

"Santa Ana, Cal., May 15, 1920.

"The Globe Grain & Milling Co. agree to buy and King & Wassum agree to sell 7000 to 8000 sacks barley delivered to the El Toro warehouse at El Toro, Calif., *as soon as possible after threshed* to be paid as soon as delivered and $1000.00 one thousand dollars to be paid immediately and applying on final payment. The price to be $3.00 per cwt. F. O. B. warehouse.

"Globe Grain & Milling Co.
"By C. W. Hutchings."

(Italics ours.)'

It will be noticed that under the terms of this contract plaintiffs, as sellers, are to deliver the barley "as soon as possible after threshed." Defendant set up in its answer a different writing, which it claims evidences the agreement as finally made. That writing, though dated May 1, 1920, was signed about May 25, 1920, under circumstances presently to be narrated. So far as it is material to our present inquiry, this second instrument is as follows:

"Santa Ana, California, May 1, 1920.

"King and Wassum has this day sold and the Globe Grain & Milling Co. of California has this day bought —— sacks of good marketable barley now being grown or located near El Toro, to be sacked in Standard new jute bags at the purchase price of $3.00 per 100 lbs., said barley to be delivered at El Toro Whse *within 100 days from the date hereof.* . . . Said King and Wassum acknowledges receipt of $1000.00 One Thousand on account of purchase price of said barley. Said Globe Grain & Milling Co. agrees to pay the balance of said purchase price of said grain upon its delivery. . . .

"Globe Grain & Milling Co.
"By C. W. Hutchings, Purchaser.
"King & Wassum, Seller,
"Per H. A. Wassum."

(Italics ours.)'

It will be noticed that according to the terms of the last-mentioned writing, the barley was to be delivered "within 100 days from the date hereof," i. e., prior to August 10, 1920. Contemporaneously with the signing of that writing by Wassum and before any barley had been

delivered, defendant paid to plaintiffs the $1,000 which, under the terms of the first agreement, was to be paid immediately by defendant on account of the purchase price. Within 100 days from the date of the second writing, plaintiffs delivered to defendant, at the El Toro warehouse, 298,099 pounds of barley, for which defendant paid the sum of $8,942.97. About October 12, 1920, which was as soon as possible after threshing and therefore within the time contemplated by the first instrument but more than 100 days after the date of the second instrument, plaintiffs offered defendant more barley. Defendant, claiming that all of the barley should have been delivered within the time mentioned in the second instrument, refused acceptance. Hence this suit.

C. W. Hutchings, who signed defendant's name to both writings, was an agent of defendant at Santa Ana. He seems to have had authority to purchase the grain for his principal, but his authority was not in writing.

The circumstances attending the signing of the two instruments were as follows: In May, 1920, plaintiffs were engaged in farming and raising barley near El Toro, in Orange County. About May 15th they orally agreed with Hutchings to sell to defendant all the barley then being raised by them, which was estimated to be between 7,000 and 8,000 sacks. During the oral negotiations preceding the execution of the first instrument, three points were discussed, namely: the amount to be delivered, the place of delivery, and the time of delivery. After some argument it finally was agreed that plaintiffs should deliver between 7,000 and 8,000 sacks, that being the estimated yield of their growing crops; that the barley should be delivered at the El Toro warehouse; and that it should be delivered as soon as possible after threshing. These promises, thus orally agreed to, were incorporated into the first writing, which correctly reflects the oral agreement. The parties never thereafter discussed any change in the terms of their agreement. If the original agreement was ever changed or modified in any respect whatever it was solely because the plaintiff Wassum, under the circumstances about to be narrated, signed the second writing in ignorance of its contents.

Stating the facts most favorably to plaintiffs, as we must do since the findings are in their favor, the circumstances attending the signing of the second instrument were substantially as follows: About a week or ten days after the execution of the first instrument, or a day or two prior to May 25, 1920, Wassum, who was a farmer, met Hutchings on the street in Santa Ana and was told by the latter that a check for the $1,000 was waiting for plaintiffs at the office of defendant in Santa Ana. Wassum, on May 25th, went to defendant's office and asked for the check. The person who delivered it to him, an employee of defendant, asked Wassum to sign a paper, whereupon the latter signed a document which he supposed was a receipt for the $1,000. He did not read the paper. It proved to be the second writing, the substance of which is set forth *supra.* Though a copy of this instrument was mailed to Wassum, he paid no attention to it, and, without reading it or knowing aught of its contents, put it away among other papers in his desk, where it remained until some time after defendant had refused to accept the barley which was offered in the month of October. Not until then did Wassum know that the paper which he had signed in defendant's office on May 25th was not a receipt for the $1,000.

Appellant's first point is that the agreement evidenced by the first writing is within the statute of frauds, that it was never taken out of the statute, and that the rights of the parties must be measured by the terms of the second instrument and not by the first. Appellant's argument runs substantially as follows: The agreement for the sale of the barley, an agreement to sell at a price exceeding $200, was within the statute of frauds, and, therefore, was required to be in writing (subd. 4, sec. 1624, Civ. Code); an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing (sec. 2309, Civ. Code); Hutchings had no written authority to sign either of the written agreements; therefore the first writing was insufficient to satisfy the statute of frauds; the sale was, however, taken out of the statute by the payment of the $1,000 to plaintiffs, but not before; since the second writing was signed contemporaneously with the payment of the $1,000 to Wassum, that payment must be

referred to the contract evidenced by the second writing and not to the contract evidenced by the first writing; and it is, therefore, the second agreement, and not the first, which was taken out of the statute of frauds by the payment of a part of the purchase price, and, therefore, the only agreement which can be enforced against defendant is that which required plaintiffs to make delivery of all the barley prior to August 10, 1920.

The trial court found that Wassum signed the second writing through mistake; that he thought it was merely a receipt for $1,000; that there was no meeting of minds between the parties when Wassum signed the second instrument; that the first agreement was the only one that has been acted upon by the parties; and that it was not superseded by the second so-called agreement.

To maintain its contention that the payment of the $1,000 which took the agreement out of the statute of frauds was made under the contract evidenced by the second writing and not under that evidenced by the first writing, appellant must establish the validity of the second writing as a complete and perfect contract, notwithstanding the instrument was signed by Wassum in the belief that it was merely a receipt for the $1,000 paid to plaintiffs on account of the purchase price. Citing *Hawkins* v. *Hawkins*, 50 Cal. 558, appellant contends that it was the legal duty of Wassum to read the alleged receipt that was handed to him; that he was chargeable with knowledge of the contents of the writing whether he read it or not; and that, being so charged with knowledge of its contents, he assented thereto by his failure to repudiate the instrument on the ground that it did not correctly embody the previous oral agreement.

There is evidence to warrant the inference that defendant misrepresented the nature of the instrument which its employee asked Wassum to sign, and the case therefore seems to be within the doctrine enunciated in *Meyer* v. *Haas*, 126 Cal. 560 [58 Pac. 1042]. [1] In our opinion it would be an extreme case that would warrant a court in holding that a party induced, through misrepresentation as to the purport of a document, to refrain from making examination of its contents, shall, nevertheless, be deemed to have given his assent to the document before its contents are in fact

known to him. All that is required is that the party who is misled into signing an instrument in ignorance of its purport shall have exercised reasonable diligence. Each case must be considered with reference to its own peculiar facts and circumstances. In this case the trial court's findings are tantamount to a finding that reasonable diligence was exercised by Wassum, and we do not think the finding should be disturbed.

[2] But however this may be, there is another reason why it must be held that the original agreement was not superseded by the second writing—the writing which was mistakenly signed by Wassum on the 25th of May under the supposition that he was signing a receipt for the $1,000. The second writing did not embody a complete contract, and for that reason alone it could not supersede the original agreement nor alter any of its terms. The second writing does not describe the subject matter of any sale. By its terms plaintiffs do not agree to sell and defendant does not agree to buy any quantity of barley whatever. The language of the second instrument is: "King and Wassum has this day sold and the Globe Grain & Milling Co. of California has this day bought —— sacks of good marketable barley now being grown or located near El Toro." There is nothing in this language which tends to show how many sacks were to be sold by plaintiffs. It might have been but two sacks, and, with just as much probability, it might have been a million sacks. The language is fatally uncertain. It describes no quantity whatever. Nor is there anything within the four corners of the instrument which tends in the slightest degree to indicate that the words "now being grown or located near El Toro" were intended to refer to the 7,000 or 8,000 sacks of barley then being grown by plaintiffs near El Toro. For aught that appears from the face of the instrument, "the —— sacks of barley now being grown or located near El Toro" might be barley grown or owned by a third party. Without the aid of extrinsic evidence the instrument entirely fails to describe the subject matter of a contract of sale. But, under the particular facts of this case, extrinsic evidence is not admissible in aid of the instrument, or, at any rate, it is not admissible in aid of the purpose which appellant seeks to accomplish by means of the sec-

ond instrument. Under the facts of this case the original oral agreement could be superseded by the instrument which Wassum signed on May 25th only in the event that that writing, in and of itself and by virtue of its own terms, embodied all of the requisites of a complete and perfect contract of sale. The parties orally agreed, in the first instance, to the sale of 7,000 to 8,000 sacks of barley. They orally agreed to all of the terms of a complete contract of sale. That oral agreement was then reduced to writing, but the agent who signed for defendant did not have any written authority to execute the instrument. The agreement, as to defendant, was thus left as though no writing had ever been signed. Plaintiff never orally agreed to any change in the terms of their oral agreement. Thereafter Wassum signed the second instrument. Since the parties never orally agreed to any change in their original contract, that contract could not be changed by a subsequently executed writing, unless such writing, in and of itself, evidenced a complete contract of sale. But, as we have shown, the second writing is not a complete contract. It describes no subject matter of sale. It follows, therefore, that even if Wassum be chargeable with knowledge of the contents of the second instrument at the time when he signed it, that instrument would not supersede the only contract ever made by the parties, namely, the oral agreement which was negotiated by them immediately prior to the drafting of the first instrument.

It is not material that Hutchings, who drafted the second instrument, may have intended to insert therein a description of the same barley that was described in the first instrument. His intention, whatever it may have been, was not communicated to plaintiffs, and therefore the only act which by any possibility can be invoked to sustain appellant's contention that the contract as originally made was altered is the bare fact that Wassum signed the second instrument—an instrument which, for reasons already stated, could not of itself alter the terms of the agreement as originally negotiated.

[3] From the foregoing it follows that when the $1,000 was paid by defendant the only agreement that ever had any existence was the original oral agreement, and that, therefore, it was that agreement which was taken out of

the statute of frauds by the part payment of the purchase price. Or if, because the $1,000 was not paid at the very time when the oral agreement was entered into, that payment, alone, was insufficient to take the sale out of the statute of frauds, nevertheless, defendant's subsequent acceptance and receipt of barley did take the original oral agreement out of the statute, since the only agreement as to which the minds of the parties ever met was the original oral agreement, and that, therefore, is the only agreement under which the barley delivered prior to August 10th could have been accepted and received by defendant.

From the foregoing it follows that respondents were entitled to recover damages for appellant's breach of the agreement sued upon, namely, appellant's agreement to buy the barley ''as soon as possible after threshed.''

[4] One other point is made: Respondents, pursuant to their contract, delivered at the El Toro warehouse the barley which appellant refused to accept. In order to regain possession, after defendant's refusal to accept the barley, so as to enable them to resell at the highest market price obtainable at the nearest market, respondents paid the warehouse charges, amounting to $76.50. The court allowed that item of expense as a part of respondents' damages. Appellant now contends that this was not a proper item of damages. No question is raised as to the reasonableness of the amount of these warehouse charges. The question is purely and simply this: Can such charges, if paid by the vendor, become a proper item of damage in any event in a suit of this character? Nor is any question raised as to the passing of title to the barley which respondents delivered to the warehouse for appellant. Both parties have argued the case upon the theory that the title to the barley on which respondents paid the warehouse charges did not pass to appellant as the vendee, and we, therefore, shall dispose of the case on the assumption that the title remained in the vendors.

Ordinarily, where, as in the instant case, the seller has made a resale, the detriment caused by the breach of the buyer's agreement to accept and pay for the property, the title to which is not vested in him, is deemed to be the excess, if any, of the amount due from the buyer under the contract over the net proceeds of such resale. (Sec.

58 Cal. App.—8

3311, Civ. Code.) That rule can readily be applied with justness and fairness in those cases where there has been no delivery to the buyer. Where, however, as in a case like this, the sellers have agreed to make delivery at a warehouse, the charges whereof are payable by the buyer if he accepts the goods, and where, as here, the buyer has failed to give any notice of his intention not to accept until after the sellers have made delivery to the warehouse pursuant to the requirements of their contract, we conclude that payment of the warehouse charges by the sellers, in order that they might thus regain possession so as to be in a position to make a resale, is not only an element of damage naturally and proximately resulting from the buyer's breach of his contract to accept and pay for the goods, but is such as must have been within the reasonable contemplation of the parties when making the contract. The buyer ought to have known that it would be necessary for the sellers to pay the warehouse charges if the former, without right, should refuse to accept the barley after the sellers had so far completed their contract as to make delivery to the warehouse in accordance with the terms of their obligation. The object of the remedy given to a seller is to make him whole on account of any loss suffered by the default of the buyer—to compensate him for all detriment proximately caused by the buyer's breach of his contract, or which, in the ordinary course of things, would be likely to result therefrom.

Moreover, the fact that warehouse charges, *eo nomine,* were specifically included in the findings as an item of damage could not increase the total amount recoverable from defendant on a resale by plaintiffs. Defendant is liable for the difference between the amount due under its contract and the net proceeds realized by plaintiffs on the resale. If plaintiffs had not paid the warehouse charges before making the resale, then it would have been necessary for them to resell the barley subject to the warehouse charges. In that event the amount realized on the resale would be less, by at least the amount due for warehouse charges, than would be the case if those charges were paid before the resale, thus increasing, by at least the amount of the unpaid warehouse charges, the difference between

the price which defendant agreed to pay for the barley and the net proceeds of the resale.

The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 14, 1922.

All the Justices present concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.