MARY C. ROYER, Respondent, v. HELENA CARTER, Appellant.

Oliver B. Schwab and Arthur Livingston for Appellant.

Kenneth D. Holland for Respondent.

TRAYNOR, J.—Defendant has appealed from a judgment for damages for breach of a contract to purchase real property. On August 23, 1948, defendant agreed to buy plaintiff's house and lot for $24,000 and paid $1,000 down. Because she was unable to secure the additional funds necessary to complete the purchase, defendant defaulted on the contract, and plaintiff put the property back on the market late in September. The following December plaintiff was able to resell the property for $18,500. The trial court awarded damages equal to the difference between the contract price and the price at which the property was resold plus the expenses incurred in connection with the first sale, but less the amount of the down payment.

 Defendant contends that because a policy of title insurance was not issued, plaintiff failed to prove that she was able to convey the property in accord with the terms of the contract. There is no merit in this contention. Plaintiff deposited all the necessary papers in escrow, and there is substantial evidence that a policy of title insurance could and would have been issued had defendant not repudiated the contract.

The contract provided "That should the purchaser fail to pay the balance of the purchase price, or fail to complete the purchase, as herein provided, the amounts paid hereon may, at the option of the seller, be retained as the consideration for the execution of this agreement by the seller." Defendant contends that under this provision plain-

tiff had an option to retain the down payment instead of suing for damages and that she exercised this option by retaining the deposit. The retention of the deposit was not, however, inconsistent with plaintiff's right to elect to hold defendant responsible for damages. Independently of any rights she may have had under the option clause itself (see Civ. Code, §§ 1670, 1671; *Freedman* v. *The Rector, etc. of St. Matthias Parish, ante,* p. 16 [230 P.2d 629]), plaintiff had the alternative right to retain the down payment as a setoff against her actual damages. (*Baffa* v. *Johnson,* 35 Cal.2d 36, 40 [216 P.2d 13].) Her retention of the money was consistent with the choice of either remedy. ▮▮ Since she informed defendant of her intention to hold defendant liable for actual damages, if the latter did not perform the contract, and since her conduct was not inconsistent with the election of that remedy, the trial court was justified in finding that the "deposit was retained by her to apply on damages sustained by reason of defendant's breach of contract."

As an affirmative defense defendant pleaded that she entered the contract under the mistaken belief that the clause giving plaintiff the option to retain the down payment would limit her liability to the amount of the down payment and that plaintiff knew of this mistake on her part. The sale was negotiated through the joint efforts of Mrs. Ries, a real estate broker to whom plaintiff had given an exclusive listing, and Mr. Medica, a real estate agent who worked for another broker. Defendant had sought Mr. Medica's assistance in locating an apartment, but he succeeded in interesting her in buying plaintiff's property instead. After visiting the property she returned to Mr. Medica's office and discussed with him the possibility of its purchase. On conflicting evidence the trial court found that Mr. Medica had pointed out the clause giving the seller the option to retain the down payment and "stated to defendant that in his opinion if she did not complete the purchase of said real property she would only lose the $1,000 deposit she was to put up." The trial court also found, however, that "said statement of Mr. Medica's was not relied upon by defendant and did not furnish any inducement for her to enter into said contract," and that it was not true that "Defendant mistakenly believed that the purchase agreement that she entered into and the contract as reduced to writing provided and meant that the deposit could be retained by the seller but that such a forfeiture was the full extent of the defendant's obligation thereunder."

■ It is unnecessary to consider defendant's contention that Mr. Medica was plaintiff's subagent whose knowledge was imputable to plaintiff, for in any event the burden was upon defendant to prove that she was mistaken as to the meaning of the contract (Code Civ. Proc., § 1981), and the trial court was not required to find in accord with her testimony on this issue. (*Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521]; *Blank* v. *Coffin*, 20 Cal.2d 457, 461-462 [126 P.2d 868].) ■ Moreover, the clause giving plaintiff an option to retain the down payment as consideration for the execution of the agreement did not purport to limit defendant's liability. Rather it provided an additional remedy for plaintiff. Defendant's testimony as to her concern over her liability, if she could not complete performance of the contract, indicates that she knew that one who enters a contract may be liable in damages for its breach. The trial court could reasonably conclude that since defendant had such knowledge she did not enter into the contract under the mistaken belief that the clause giving an optional remedy to plaintiff also limited defendant's liability.

■ The trial court awarded damages based on a finding that the value of the property to plaintiff under Civil Code, section 3307,[1] was equal to the resale price of $18,500. The resale took place approximately three months after the date of defendant's breach, and it is undisputed that the value of the property was declining during that period. Various witnesses gave their opinions as to the value of the property at the time of the breach, the lowest estimate being $22,500. Although the resale price was evidence of the value of the property to plaintiff at the time of the resale (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 757-758 [192 P.2d 935]), the trial court's failure to make an adjustment for the admitted decline in the market was erroneous, unless the damages are to be computed as of the date of resale rather than as of the date of the breach. Plaintiff contends that under Civil Code, section 3353,[2] it was proper for the trial court to determine the value as of the later date.

---

[1] "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him."

[2] "In estimating damages, the value of property to a seller thereof is deemed to be the price which he could have obtained therefor in the market nearest to the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, for the seller to effect a resale."

Under the provisions of section 3353 the value of the property is to be determined, not as of the date of the breach of the contract, but as of such time thereafter "as would have sufficed, with reasonable diligence, for the seller to effect a resale." Defendant contends, however, that the reference to "the market nearest to the place at which [the property] should have been accepted" makes clear that the section was intended to apply only to sales of personal property.

The language defendant relies upon is apposite to contracts for the sale of personal property. It sets forth the elements of performance of such contracts, and indicates a physical change of possession at a particular place. Such language does not describe any of the duties of a vendee of an estate in real property. At most such a vendee is obliged to accept a conveyance; he need not take possession of the property itself. Similarly the reference to the nearest market indicates concern with personal rather than real property. The seller must deliver the property to a certain place, and if the buyer refuses to accept it the seller may then dispose of it in the nearest market. Thus the language of the statute itself suggests that it is limited to sales of personal property.

Before the adoption of the Uniform Sales Act (Civ. Code, § 1721 et seq.) in 1931, section 3353 was invoked by the courts to define the term "value to the seller" as used in former Civil Code, section 3311, which stated the measure of damages for breach of an agreement to accept and pay for personal property. (See, e. g., *Hill* v. *McKay,* 94 Cal. 5, 17-18 [29 P. 406].) In cases involving sales of real property, however, it has generally been held that the value of the property to the seller is to be determined as of the date of the breach. (*Drew* v. *Pedlar,* 87 Cal. 443, 450-451 [25 P. 749, 22 Am.St. Rep. 257]; *Baffa* v. *Johnson,* 35 Cal.2d 36, 39-40 [216 P.2d 13]; *Dean* v. *Hawes,* 21 Cal.App. 350, 355 [131 P. 885]; *Shurtleff* v. *Marcus Land etc. Co.,* 59 Cal.App. 520, 523 [211 P. 244]; *Caspar Lumber Co.* v. *Stowell,* 37 Cal.App.2d 58, 61 [98 P.2d 744]; *Employees' Participating Assn.* v. *Pine,* 91 Cal.App.2d 299, 301 [204 P.2d 965]; see, also, McCormick on Damages, § 186, pp. 710-711; anno., 52 A.L.R. 1511, 1512.) Thus the rule that has been consistently followed in determining the damages for breach of an agreement to purchase an estate in real property is inconsistent with the provisions of section 3353. Although its applicability in such cases has apparently never been directly adjudicated, the fact that it was regularly invoked in cases involving personal property

convinces us that it was not considered in real property cases because it was regarded as inapplicable, not because it was overlooked. ■ We conclude that section 3353 has no application to sales of real property, and that the damages should therefore be computed as of the date of the breach of the agreement to purchase the property.

Defendant contends that the trial court also erred in allowing as additional damages $45 in escrow charges, $40 in title charges, and $420 in broker's fees paid in connection with the first sale. ■ When, as under section 3307, the measure of damages is designed to assure to the vendor the benefit of his bargain, additional damages should not be allowed for expenses that would have been incurred had the contract been performed. To do so would place the vendor in a better position than he would have been in had there been no breach. (Civ. Code, § 3358.) Thus, plaintiff would have paid the expenses from the proceeds of the sale had the contract been performed. If she is given the equivalent of the proceeds of the sale under section 3307 she is not also entitled to expenses that she would have incurred in any event.

■ In many cases, however, the vendee's breach may make it necessary for the vendor to incur additional expenses to realize the benefit of his bargain. Given the rule that the value of the property to the seller under section 3307 is ordinarily the market value at the time of the breach (*Employees' Participating Assn.* v. *Pine*, 91 Cal.App.2d 299, 301 [204 P.2d 965], and cases cited), injustice could result if the vendor were not allowed to recover damages for additional expenses caused him by the vendee's breach. Thus in a case where the property is sold at the market value and that value remains constant until after the breach, and the property is then resold at the same price, the vendor could recover no damages under section 3307. He would be forced to pay, however, in addition to the expenses of the first sale, the expenses of the resale. When such additional expenses are the natural consequence of the breach, they may be recovered in addition to those provided for in section 3307. (*Yocum* v. *Taylor*, 50 Cal.App. 294, 295 [195 P. 62]; accord, *King* v. *Globe Grain etc. Co.*, 58 Cal.App. 105, 114 [208 P. 166], adopting same rule with respect to former Civil Code, section 3311; see 5 Corbin on Contracts, § 1036, p. 186.) The statements in *Morgan* v. *Dibble*, 43 Cal.App. 116 [184 P. 704], and *Maloney* v. *Houston*, 51 Cal.App. 585 [197 P. 661], indicating that section 3307 provides the exclusive measure of damages were not nec-

essary to the decisions in those cases and are disapproved.

■ It does not follow that the actual expenses of the first sale will necessarily be equal to the additional expenses caused by the vendee's breach. If all of the contemplated expenses of the first sale are actually paid and the property does not change in value, ordinarily the additional expense of reselling made necessary by the breach will be equal to those incurred in the first sale. In the present case, however, it appears that all the contemplated expenses of the first sale were not paid and that the cost of reselling at the market value at the time of the breach would have been less than the cost of selling at the contract price. Under the terms of her agreement with the broker plaintiff was not obligated to pay the full commission on the first sale in case of defendant's default. She paid only $420, thus saving $780 of the anticipated expense of the first sale.

Since the cost of a sale under the usual brokerage contract is 5 per cent of the purchase price, what that cost would have been at the time of defendant's breach cannot be determined in the absence of a finding of the market value of the property at that time. On retrial, the trial court, in computing the additional damages caused by defendant's breach, should allow an amount equal to the difference between the cost of selling the property at its value at the time of the breach and $780, the amount the anticipated expenses of the first sale were reduced by defendant's default.

■ In fixing the damages on the basis of the resale price, the trial court failed to make a deduction for the value of certain personal property included in the first sale but not in the second. On retrial the value of the personal property agreed to be sold with the realty should be taken into consideration.

The judgment is reversed and the trial court is directed to retry only the issue of damages in accordance with the views expressed herein. Each party is to bear her own costs on this appeal.

Gibson, C. J., Shenk, J., Edmonds, J., and Carter, J., concurred.

SCHAUER, J.—I concur in the judgment and generally in Justice Traynor's opinion. In so doing, however, I deem it proper to note that I consider the resale price obtained by plaintiff as constituting some evidence of the value of the

property to her on the date of the breach. The fact that there was a falling market on and following that date must be considered in connection with the price finally obtained in order to estimate the value as of the date of breach, but that fact also must be considered as affecting the price reasonably obtainable by a seller who first learns on the date of breach that a new purchaser must be obtained.

In other words, an appraiser in estimating, and a court in finding, the value to the seller on the date of breach must necessarily take into consideration the fact that some appreciable time is ordinarily required to find a purchaser ready, able and willing to buy. The value to the seller on the date of breach should be the price obtainable on an offering of the property on that date with allowance for a reasonable time within which to find a purchaser. Certainly the seller who does not breach his contract should not have to anticipate a breach by the contracting purchaser nor should such a seller have to stand all or any part of the loss necessarily flowing from the purchaser's breach. Thus, if the price finally obtained in a falling market is the best price which reasonably could be procured, with due diligence, on an offering made as of the date of breach, the value to the seller as of such date would be no more than the price actually obtained.