[Civ. No. 17760.   First Dist., Div. One.   Sept. 19, 1958.]

E. W. VAN BUSKIRK et al., Appellants, v. WILLIAM F. McCLENAHAN et al., Respondents.

*Assigned by Chairman of Judicial Council.

Foley & Foley and James W. Foley for Appellants.

Mullin & Cost and Hugh F. Mullin, Jr., for Respondents.

ST. CLAIR, J. pro tem.*—Plaintiffs appeal from an order granting defendant's motion for a nonsuit. In granting the motion, the trial court said: "It is the opinion of the Court that there was no diligence shown in this case in the sale of this house. The plaintiffs being in the building business and knowing the market value, and, in fact, the market rising rather than dropping, the Court feels that the defendants in this case didn't have much to say as to the sale of this property."

On September 20, 1948, plaintiff as "Seller", defendant as "Purchaser" signed a document entitled "Deposit Receipt." "Purchaser" agreed to buy and "Seller" agreed to sell in accordance with the terms and conditions of the receipt. The total purchase price was "Overhead [sic] [the parties at the trial apparently proceeded on the theory that this meant 'cost of building the house'] plus 10% profit in

---

*Assigned by Chairman of Judicial Council.

addition to $4900.00 for the lot." Defendant was to furnish plumbing, heating, sheet metal and kitchen cabinets and equipment "which amount sellers shall not pay or allow to purchasers until said deal is consummated." Five thousand dollars was to be paid on or before September 27, 1948. ". . . the balance of same is to be paid within_____days from the date hereof . . ." The number of days was never inserted nor was any evidence taken thereon at the trial.

At the trial plaintiffs proved (1) the contract, (2) that the house had been started prior to the date of the contract, (3) that the type and design of the house had been decided by the defendant, (4) that defendant had ordered the plumbing, etc., referred to in the agreement, (5) that plaintiffs had paid for the last items, (6) that the $5000.00 was never paid, (7) that direct costs were $32,305.21, (8) that total amount due under the contract was $41,905.39, (9) that on March 15, 1949, they demanded that defendant perform under the agreement within five days or meet a third party's offer, (10) that defendant did not perform or meet the offer, (11) that plaintiffs then sold the house for $32,500 to the third party in question.

The suit by plaintiffs was for the difference between $41,-905.39 and $32,500, to wit, $9,405.39. This last figure is correct mathematically, according to plaintiffs' proof, although the prayer of the complaint differs by a few cents.

On cross-examination one of plaintiffs testified that in his opinion the fair market value of the property on April 1, 1949, was $45,000; that $32,500 ". . . was all we could get for it at the time"; that the house had been listed with three or four real estate brokers from October, 1948, to date at $45,000; that there had been no offers other than the one accepted.

The defendant (called under Code Civ. Proc., § 2055) testified that, after September 20, 1948, he listed the house for sale; tried to sell it; assisted plaintiffs in trying to sell; that he felt a certain responsibility and was trying to help move the home; that he knew before signing the agreement that the cost would be thirty-six or thirty-seven thousand without the plumbing, heating or kitchen cabinets.

Over the continuing objection of counsel for plaintiffs that it was an attempt to vary a written agreement by parol evidence the defendant testified that it had been agreed, prior to signing (1) the cost was not to exceed $10 a square foot, (2) total cost was not to exceed $23,000, (3) if the total cost

was over the last figure, the house was to be sold as a speculative venture, (4) plaintiffs wanted the agreement signed (a) to protect their interests and (b) to have something to show as to the reason the house was built.

On a motion for nonsuit, "[e]very favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiffs. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiffs. *If contradictory evidence has been given it must be disregarded. ...* Evidence, whether erroneously admitted or not, if relevant to the issues joined, must be given the credit and benefit of its full probative strength, and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered." (Emphasis added.) (*Wulfjen* v. *Dolton,* 24 Cal.2d 878, 880 [151 P.2d 840], quoting from *Berger* v. *Lane,* 190 Cal. 443, 452-453 [213 P. 45].) "The fact that some witness in behalf of plaintiff, or even plaintiff himself, in giving his testimony, may have contradicted or discredited himself in some particular, is not determinative." (*Cash* v. *Los Angeles Ry. Corp.,* 6 Cal.App.2d 738, 742 [45 P.2d 280] ; see also *In rc Ross,* 173 Cal. 178, 183 [159 P. 603].)

Applying the above rule to the above facts, it would appear that the judgment of nonsuit should be reversed. Defendant urges here, and urged in the trial court that one other element negatives the ordinary application of the rule, to wit, that the plaintiffs failed to prove damage. Proof of damage is a vital part of the cause of action. (*Senter* v. *Monroe,* 77 Cal. 347, 349 [19 P. 580] ; *Westwater* v. *Grace Church,* 140 Cal. 339 [73 P. 1055] ; *Southall* v. *Security Title Ins. etc. Co.,* 112 Cal.App.2d 321, 323 [246 P.2d 74] ; see *Domino* v. *Mobley,* 144 Cal.App.2d 24, 29 [300 P.2d 324].) Civil Code, section 3307, provides: "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him." As a general rule, the value to the seller of the property is the market value at the time of the breach (*Employees' Participating Assn.* v. *Pine,* 91 Cal. App.2d 299, 301 [204 P.2d 965] ).

Defendant seizes upon the testimony of one of appellants that the market value of the property on April 1, 1949 (see

*infra,* discussion as to the time of breach) was $45,000. He then argues that it is not possible for plaintiffs to be injured as the contract price was below the market value.

In *Shurtleff* v. *Marcus Land etc. Co.,* 59 Cal.App. 520, the court at page 522 [211 P. 244], had the following to say as to how one proves market value: "In arriving at the value of the property to the seller the court properly received evidence not only of the amount realized by the seller through the sale which she made, but also of the rental value of the property, the condition of the title, and the reasonable market value as testified to by experts, which included those elements which they regard as relevant to the issue, such as: The activity of the market, the use for which the property is adapted, its relation to transportation facilities, and other matters which we need not here delineate. The appellant's expert witnesses in response to questions asked by her counsel gave opinions as to the market value of the property at the date of the breach of contract."

It is clear from the above quotation, and from *Royer* v. *Carter,* 37 Cal.2d 544 [233 P.2d 539], and *Mathews* v. *MacArthur,* 119 Cal.App.2d 196 [258 P.2d 1068], that evidence of the resale price is properly admitted as one of the factors in determining market value.

If the resale time is different or later than the time of the breach, then evidence should be adduced as to any difference, if any, in the market value between the two dates. (*Mathews* v. *MacArthur; supra.*)

In the instant case, all parties apparently tried the case on the theory that the breach occurred on March 15, 1949, or April 1, 1949. The question by which defendant elicited that the market value was $45,000 (the prime basis for respondents' position on appeal) keyed the value to April 1, 1949. *The resale was at substantially the same time as the breach.*

There having been considerably more evidence relating to market value than the opinion relating to $45,000, including a resale at the time of breach at $32,500, the application of the above quoted rule applicable to nonsuits brings the conclusion that a trier of facts could reasonably deduce that the value to the plaintiffs at the time of the breach was $32,500 and hence the plaintiffs were damaged, as prayed.

Did the evidence conclusively establish a defense?

■ Defendant's second argument, that a defense of failure to mitigate damages had been conclusively proved, also depends upon uncontradicted proof that the market value of

the house was actually $45,000. It is true that a nonsuit is proper when the plaintiff's evidence conclusively establishes a defense. (*Crebs* v. *Uplifters Country Home,* 133 Cal.App. 88, 95 [23 P.2d 807]; *Nulsen* v. *Nulsen,* 3 Cal.App.2d 407, 409 [39 P.2d 509]; *Meadows* v. *Emett & Chandler,* 86 Cal.App. 2d 1, 11 [193 P.2d 785]; 16 Cal.Jur.2d 215, § 48.) However, since it was not conclusively proved that the market value of the house was greater than the contract price, and the contrary inference is permissible, it cannot be said that the defense was conclusively established here.

In view of the fact that the case must be returned to the trial court for further hearing it seems appropriate to comment on the grounds given by the trial judge for the nonsuit. It is assumed that the reference to lack of diligence on the part of the appellants invokes the rule that a vendor must so act as to mitigate the damages to the vendee.

The rule as to diligence is set forth in Civil Code, section 3353, reading: "In estimating damages, the value of property to a seller thereof is deemed to be the price which he could have obtained therefor in the market nearest to the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, for the seller to effect a resale."

In *Royer* v. *Carter, supra,* 37 Cal.2d 544, the Supreme Court squarely held that that section does not apply to sales of real property. And in logic, it should not, as the vendor is bound by the value to him (market value) at the time of breach, without regard for the time he sells.

Judgment is reversed.

Peters, P. J., and Bray, J., concurred.