[Civ. No. 6169. Fourth Dist. Jan. 28, 1960.]

WILLIAM F. BOUCHARD et al., Respondents, v. EMMETT S. ORANGE et al., Appellants.

Donnelley, MacNulty & Butler and Richard P. MacNulty for Appellants.

Orfield & Thompson and Franklin B. Orfield for Respondents.

SHEPARD, J. — Defendants appeal from a judgment awarding to plaintiffs $4,000 damages for breach of contract to buy certain residence property. The cause was heard by the court without a jury.

Plaintiffs built a house on Lot 24, Fleetridge Height, located in the Point Loma area of the city of San Diego. Plaintiffs employed a duly licensed contractor to superintend the construction but did not themselves have a contractor's license. Plaintiffs, at the time of construction, anticipated that they would, upon completion, sell the house and lot. The property was offered for sale through a multiple listing system which apparently included all of the real estate brokers in the Point Loma area. It was offered at the price of $37,000. September 21, 1957, defendants made an offer of purchase in the amount of $37,000 and plaintiffs accepted the offer. September 22, 1957, an escrow was opened and written instructions embodying the essential terms of the transaction were signed by both parties. September 29, 1957, written notice was given by defendants to the escrow holder whereby defendants repudiated the contract of purchase. At the trial all parties stipulated in open court through their counsel that at the time the contract of sale was made on September 21, 1957, the fair market value of the property sold was $37,000. Testimony was offered and received without objection, that the fair market value of the property on September 29 (the date on which written repudiation of the contract was made) was $33,000; that the property

was extensively advertised for nearly six months following the repudiation and that the highest and best price offered by anyone was the sum of $33,000; and that the property was finally sold in the month of March, 1958, for said sum of $33,000. Testimony was further received in explanation of why the value of the property had apparently dropped from $37,000 to $33,000 in the short period of time elapsing from September 21 to September 29. Two reasons were advanced: First, that the property was on a multiple listing, that is, was listed with many brokers throughout the area; that the notice of repudiation of sale when transmitted to these brokers immediately raised a question in their minds and in the minds of prospective buyers as to whether or not there was something radically wrong with the property; second, that there actually appeared to have been a short recession in house buying that occurred somewhere in the neighborhood of the particular week here involved, and that that recession reduced the market substantially. Not only was there no objection to this testimony, but it was brought out almost entirely by defense counsel on cross-examination of witnesses whose experience in the market was such as to give them extensive knowledge on the subject.

 Defendants' first contention is that damages caused by the breach of an agreement to purchase real property is the difference between the unpaid purchase price contracted for and the fair market value of the property at the time of breach of that contract; that the breach really occurred September 23, 1957, instead of September 29, 1957; that since the value of the property on September 21, 1957, was conclusively established at $37,000 the finding by the court that the fair market value at the time of breach was $33,000 was not supported by the evidence because too short a time elapsed between the date of contract and the date of breach for the value of the property to decrease in the amount of $4,000, under the evidence shown by the record.

First, it will be noted that there were two possible dates under consideration by court and counsel as dates of breach. The first was September 23, when one of the defendants apparently made some kind of oral statement to the real estate agent about not going through with the purchase. The testimony is somewhat divergent as to what took place at that time, as well as what was said about the reasons for defendants' possible rejection of the contract. The trial court chose to believe that the second of the two dates; viz., Sep-

tember 29, when a written notice of repudiation was given, was the correct date of breach. We see no reason why under the evidence the court was compelled to believe that the breach took place on September 23, and we see no error in the court's exercise of its discretion in choosing September 29 as the date of breach.

Taking the court's selection, then, of September 29 as the correct date of breach, we look to Civil Code, section 3307, as our basic guide in estimating the amount of damage. It reads as follows:

"BREACH OF AGREEMENT TO BUY REAL PROPERTY. The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him."

Throughout our judicial history substantially the same meaning has been given to this section. In *Drew* v. *Pedlar*, 87 Cal. 443, 451 [25 P. 749, 22 Am.St.Rep. 257], our Supreme Court quotes from Field on Damages, section 508:

" 'The general rule of damages on failure of the vendee to take the property purchased, and pay for the same, would be the actual loss sustained by the vendor thereby; which would ordinarily be the difference between the actual contract price and the actual value of the land at the time of the breach, if the property shall have declined in value.' "

Since that time numerous decisions have given it a similar meaning. (*Dean* v. *Hawes*, 21 Cal.App. 350, 355 [2] [131 P. 885]; *Beason* v. *Griff*, 127 Cal.App.2d 382, 386 [274 P.2d 47]; *Employees' Participating Assn.* v. *Pine*, 91 Cal.App.2d 299, 301 [1] [204 P.2d 965].) It has also been repeatedly held that the value to the vendor must be fixed as of the date of the breach of contract. (*Royer* v. *Carter*, 37 Cal.2d 544, 549 [7] [233 P.2d 539].)

It is true that it is the duty of the trial court when using the resale price as evidence of value as of the time of breach to make an adjustment for any decline in market value between the date of breach and the date of resale. (*Royer* v. *Carter, supra*, p. 548 [6].) However, in the case here at bar there was not only direct testimony that the value had dropped to $33,000 as of the date of breach; that there had been a sharp decline in or about the week between contract and breach; that the repudiation itself would have a sharp influence on the immediate fair market

value of the property, especially in view of the multiple listings, but there was also evidence that following the general decline of the market for houses in the Point Loma area during part of the six months between breach and final sale, there was an upturn in value. It was also shown that the property was well advertised during the six months' period between breach and final sale, one broker stating that he had spent about $600 on advertising and had made every effort to sell it. It was further shown that the amount of $33,000 was the highest and best offer obtained during the entire period from breach to final sale. All of this evidence was usable by the court as against contrary evidence produced by defendants. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 756 [192 P.2d 935]; *Shurtleff* v. *Marcus Land etc. Co.*, 59 Cal.App. 520, 522 [211 P. 244]; *Van Buskirk* v. *McClenahan*, 163 Cal.App.2d 633, 637 [329 P.2d 924]; *Mathews* v. *MacArthur*, 119 Cal.App.2d 196 [258 P.2d 1068].)

All of these matters were before the trial court and it was for the trial court to draw, from this and other evidence, the inference favorable to the contention of plaintiffs or to the contention of defendants as to the trial court might appear to preponderate in weight. In our opinion the evidence was sufficient to support the trial court's conclusion.

It hardly appears necessary to give extensive citation to the proposition that when it appears that two or more inferences can reasonably be drawn from the evidence the reviewing court cannot substitute its conclusions for those of the trial court. (*Estate of Bristol,* 23 Cal.2d 221, 223 [2] [143 P.2d 689].)

Defendants' next contention is that the trial court erred in giving any consideration to the fact that plaintiffs have been offered $33,000 for the property. While the matter of the offer, standing alone, would be of little value, the fact that assiduous efforts were made at resale with substantial sums spent on advertising by the brokers and that in spite of these efforts the highest and best offer obtained at any time after the breach was $33,000 was corroboration of the testimony of plaintiff that the fair market value as of the time of breach was $33,000 and it was receivable for that purpose. (*Bagdasarian* v. *Gragnon, supra; Mathews* v. *MacArthur, supra; Shurtleff* v. *Marcus Land etc. Co., supra; Van Buskirk* v. *McClenahan, supra.*)

It is further contended that plaintiffs had no contractor's license and that therefore the contract of sale of

the house is prohibited by law and is void. Unfortunately for this contention, the contract here under consideration was for the sale of a completed house. Nothing in the case at bar relates to house construction or raises any dispute over the construction of the house. We can find nothing in the contractor's license law which even hints at defeating the sale of a house under the circumstances here at bar. Counsel have advised us of no authority even suggesting a possible application of the contractor's license law to the sale of a completed house, nor has our own research developed any. The cases of *People* v. *Moss,* 33 Cal.App.2d Supp. 763 [87 P.2d 932], cited by plaintiffs, and *Moon* v. *Goldstein,* 69 Cal.App.2d Supp. 800 [158 P.2d 1004], cited by defendants, have no application to the facts in the case at bar. The first was an attempted application of a criminal penalty under the statute, and the latter was an attempted cross-complaint by an owner-contractor against a plasterer alleged to have been engaged in the construction work itself. In contradistinction the case at bar is one involving the sale of the entire property to a person who was in no way interested in the construction work as such, and this kind of situation is not in any way referred to in the statute. The point has no merit.

The defendants next contend that the offer to buy and the subsequent escrow agreement show that the agreement of purchase was conditioned on defendants' ability to obtain a loan in the amount of $23,000. First, it should be noted that there is nothing in the evidence to show that defendants in any way based their notice of repudiation of the contract of purchase on the ground that they were unable to obtain the $23,000 loan. The plaintiffs were not apprised by them of any such loan trouble. There is no evidence nor is there any offered proof that defendant Emmett S. Orange ever made an application to anyone for a loan of any kind. The only offered evidence on this score is that defendant Rose Orange made an informal inquiry at a loan company in La Jolla and received negative information, but even this phase of the matter does not appear to ever have been communicated to plaintiffs prior to the commencement of this action. The evidence is such that the trial court was entirely justified in concluding that defendants had not made any serious attempt in good faith to obtain a loan.

Above and beyond this evidentiary feature, however, is

the fact that there is no showing in the evidence that there was any express agreement making the procuring of the loan a condition precedent to the obligations of the contract.

 "Stipulations in a contract are not construed as conditions precedent, unless that construction is made necessary by the terms of the contract." (*Deacon* v. *Blodget,* 111 Cal. 416, 418 [1] [44 P. 159]; *Diepenbrock* v. *Luiz,* 159 Cal. 716, 718 [115 P. 743, Ann.Cas. 1912C 1084, L.R.A. 1915C 234]; *San Diego Constr. Co.* v. *Mannix,* 175 Cal. 548, 556 [166 P. 325]; *Alpha Beta Food Markets* v. *Retail Clerks Union,* 45 Cal.2d 764, 771 [3] [291 P.2d 433].)

Judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 23, 1960.